**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JAI SAI BABA LLC, et al., | : | CIVIL ACTION |
| | : | |
| Plaintiffs, | : | 5:20-cv-02823-JFL |
| | : | |
| v. | : | |
| | : | |
| CHOICE HOTELS INTERNATIONAL, INC. and | : | Oral Argument Requested |
| CHOICE HOTELS OWNERS COUNCIL, | : | |
| | : | |
| Defendants. | : | |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

# <u>TABLE OF CONTENTS</u>

I.    STATEMENT OF FACTS ................................................................................. 1

II.   STATEMENT OF THE QUESTIONS INVOLVED ....................................... 4

III.  SUMMARY OF THE ARGUMENT ............................................................. 5

IV.   ARGUMENT .................................................................................................. 6

   A.   Legal Standard ......................................................................................... 6

   B.   The Arbitration Clauses Violate the Effective Vindication Rule ........................ 7

      1.   The lack of pre-hearing discovery serves as a barrier to the effective vindication of Franchisees' claims .................................................................. 8

      2.   Individual arbitration costs would be prohibitively expensive, thus the Arbitrations Clauses prevent the effective vindication of the Franchisees' claims. .............................. 13

   C.   The Arbitration Clauses are Unenforceable Because They are Unconscionable ............. 18

      1.   The Arbitration Clauses are procedurally unconscionable contracts of adhesion. ........ 19

      2.   The Arbitration Clauses are so one-sided as to be substantively unconscionable. ........ 22

   D.   The Arbitration Provisions are Not Enforceable by CHOC ............................... 26

   E.   Even if this Court Compels Arbitration, Not All of the Claims Should Proceed on an Individual Basis ............................................................................ 28

V.    CONCLUSION ............................................................................................... 29

# **TABLE OF AUTHORITIES**

**Cases**

*Adloo v. H.T. Brown Real Estate*, 344 Md. 254 (Md. 1996). ....................................................... 24

*Allen Myland Inc. v. International Business Machines Corp.*, 33 F.3d 194 (3d Cir. 1994), ........ 10

*Am Express Co. v. Italian Colors Rest.*, 570 U.S. 228 (2013) ................................................. 7, 13

*Blair v. Scott Specialty Gases*, 283 F.3d 595 (3d Cir. 2002) ....................................................... 18

*Bradford v. Rockwell Semiconductor Sys., Inc.*, 238 F.3d 549 (4th Cir. 2001) ........................... 14

*Celotex Corp v. Catrett,* 477 U.S. 317 (1986). ............................................................................... 6

*Choice Hotels International, Inc. v. Chewl's Hospitality, Inc.*, 91 Fed. Appx. 810 (4th Cir. 2003) ........................................................................................................................................... 21

*Clerk v. First Bank*, 735 F. Supp. 2d 170 (E.D. Pa. 2010); ......................................................... 23

*Discover Bank v. Superior Court*, 36 Cal. 4th 148 (Cal. 2005). .................................................. 25

*Doyle v. Fin. Am., LLC*, 173 Md. App. 370 (Md. Ct. Spec. App. 2007) ....................................... 19

*Eastman Kodak Co. v. Image Technical Servs., Inc.* 504 U.S. 451 (1992). ................................. 11

*F.B. Leopold Co. v. Roberts Filter Mfg. Co*, 882 F. Supp. 433 (W.D. Pa. 1995) ........................ 10

*Goff v. G2 Secure Staff LLC*, 2013 U.S. Dist. LEXIS 59628 (C.D. Cal. April 22, 2013) ........... 12

*Gordon v. Sterling Jewelers, Inc.*, 2017 U.S. Dist. LEXIS 197681, at *7-8 (D. Md. Nov. 30, 2017) ....................................................................................................................................... 20

*Green Tree Financial Corp.-Alabama v. Randolph*, 541 U.S. 79 (2000) ..................................... 13

*Griggs v. Evans*, 205 Md. App. 64, 43 A.3d 1081 (Md. App. 2012) ........................................... 27

*Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764 (3d Cir. 2013) ......................... 6

*Hall v. Treasure Bay V.I. Corp.*, 371 Fed. Appx. 311 (3d. Cir. 2010). ....................................... 14

*Irish v. Ferguson*, 970 F. Supp. 2d 317 (M.D. Pa. 2013) ............................................................ 10

*Johnson Lane Corp.*, 500 U.S. 20 (1991). ................................................................................... 11

*Mohammad v. Uber Techs, Inc.*, 836 F.3d 1102 (9th Cir. 2016) .................................................... 7

*Mould v. NJG Food Serv*., 986 F. Supp. 2d 674 (D. Md. 2013). .................................................. 19

*Northland Ins. Co. v. Shell Oil Co.*, 930 F. Supp. 1069 (D.N.J. 1996); ....................................... 10

*O'Hanlon v. JPMorgan Chase Bank, N.A.*, 2015 U.S. Dist. LEXIS 137213 (C.D. Cal. Oct. 7, 2015) ........................................................................................................................................ 12

*Ostroff v. Alterra Healthcare Corp.*, 433 F. Sup.. 2d 538 (E.D. Pa. 2006) ...................... 12, 13, 23

*Parilla v. IAP Worldwide Servs. VI, Inc.*, 368 F.3d 269 (3d Cir. 2004) ....................................... 14

*Promega Corp. v. Life Techs. Corp.*, 674 F.3d 1352 (Fed. Cir. 2012) .......................................... 12

*Somerset Consulting, LLC v. United Capital Lenders, LLC*, 832 F. Supp. 2d. 474 (E.D.Pa. 2011). ............................................................................................................................................... 6

*Takiedine v. 7-Eleven, Inc.*, 2019 U.S. Dist. LEXIS 29201 (E.D. Pa. Feb. 22, 2019)................ 21

*Torres v. CleanNet U.S.A. Inc.*, 90 F. Supp. 369 (E.D. Pa. 2015) ................................................. 7

*Walker v. Ryan's Family Steak Houses, Inc.,* 400 F.3d 370 (6th Cir. 2005) ............................... 12

*Walther v. Sovereign Bank*, 386 Md. 412 (2005). ................................................................. 19, 22

*Winston v. Academi Training Ctr.*, 2013 U.S. Dist. LEXIS 34850 (E.D. Va. Mar. 13, 2013)....... 8

**Statutes**

42 U.S.C. § 1981 ........................................................................................................................... 11

Md. Bus. Reg. Cd. § 14-201 ......................................................................................................... 23

Md. Bus. Reg. Code § 14-229......................................................................................................... 24

**Rules**

Federal Rule of Civil Procedure 12(b)(6), ...................................................................................... 6

Federal Rule of Civil Procedure 56 ................................................................................................ 6

Plaintiffs Jai Sai Baba LLC, *et al*. ("Franchisees" or "Plaintiffs"), by and through their undersigned counsel, respectfully submit this Memorandum of Law in Opposition to Defendants' Motion to Compel Arbitration and Stay Proceedings.

## I.      STATEMENT OF FACTS

Plaintiffs (hereafter "Franchisees") are individual franchisees who operate one or more hotels under a Choice brand mark. First Amended Complaint ("FAC") ¶ 5. Defendants are Choice Hotels International, Inc. ("Choice"), an international hotel franchisor with thousands of franchisees worldwide, and the Choice Hotels Owners Council ("CHOC"), an association of Choice franchisees. FAC ¶¶ 3-4, 19.  Franchisees allege that Choice, in cooperation with CHOC, has violated federal, state, and common law by, *inter alia*, requiring Franchisees to pay inflated prices to third-party vendors for products necessary to the operation of their hotels; corrupting CHOC and denying Franchisees its honest services; requiring Franchisees to abide by a variety of unconscionable franchise terms and practices; and discriminating against franchises owned by hoteliers of Indian-American background. FAC ¶¶ 1-19.  Specifically, Franchisees bring claims against Defendants for violations of the RICO Act (FAC Counts I-IV); breach of contract (FAC Count V); common law fraud (FAC Count VI); declaratory judgment (FAC Count VII); violations of the Sherman Act (FAC Count VIII); breach of fiduciary duty (FAC Count IX); violation of 42 U.S.C. § 1981 (FAC Count X); for an accounting (FAC Count XI); and a violation of a variety of state franchise laws (FAC Count XII-XVII).

Franchisees all entered into Franchise Agreements with Choice, which contain one of nine Arbitration Clauses. Loney Declaration ¶ 3. As Defendants have pointed out, each Arbitration Clause is identical in its substance, at least with regards to the issues at hand in this Motion, except insofar as about a third of the Franchise Agreements lack a class waiver provision. *Id.*  A sample of the Arbitration Clauses reads as follows:

21. <u>Arbitration</u>. Except for our claims against you for indemnification or actions seeking to enjoin you from using any of our Intellectual Property (including the Brand Mark) or the Choice-Related Words in violation of this Agreement or any other related agreements (including the Online Terms of Use), any controversy or claim arising out of or relating to this Agreement or any other related agreements, or the breach of this Agreement or any other related agreements, including any claim that this Agreement or any part of this Agreement or any related agreements is invalid, illegal, or otherwise voidable or void, as well as any claim that we violated any laws in connection with the execution or enforcement of this Agreement or any related agreements and any claims for declaratory relief, will be sent to final and binding arbitration in the state of Maryland before either the American Arbitration Association, J.A.M.S., or National Arbitration Forum in accordance with the Commercial Arbitration Rules of the American Arbitration Association, including its rules for emergency measures of protection, except to the extent that the Commercial Rules of the American Arbitration Association may be interpreted to require you or us to produce documents, witnesses, or information at a time other than at a hearing on the claim without our mutual consent. In the event more than one demand for arbitration is filed in connection with this Agreement or any related agreements, the demand filed with the American Arbitration Association, J.A.M.S., or National Arbitration Forum office having jurisdiction over Maryland proceedings shall take precedence, and any other demand shall be withdrawn and presented in the Maryland filing. The arbitrator will apply the substantive laws of Maryland, without reference to its conflicts of law provision, except that nothing herein shall be construed to establish independently your right to pursue claims under Maryland's Franchise Registration and Disclosure Law. Judgment on the arbitration award may be entered in any court having jurisdiction. If any party fails to appear at any properly noticed arbitration hearing, an award may be entered against the party, notwithstanding its failure to appear. Any arbitration will be conducted at our headquarters office in Maryland and the parties agree that any state laws attempting to prohibit arbitration in Maryland are pre-empted by the Federal Arbitration Act. Nothing in this Section 21 will be construed as requiring you or us to make a claim in arbitration before exercising any rights you or we may have to give notice of default or termination in accordance with the terms of this Agreement or any related agreements.

Loney Decl. Ex. A § 21. Additionally, the Agreements contained a provision specifying that

they do not provide a benefit to third-parties:

<u>No Third Party Beneficiaries</u>. Except as otherwise expressly provided in this Agreement, nothing in this Agreement is intended, nor will anything in this Agreement be deemed, to confer on any person or legal entity other

> than us or you, or our respective successors and permitted assigns, any
> rights or remedies under or by reason of this Agreement.

*Id.* § 20(b). "We" and "us" are defined under the Agreement as meaning "Choice Hotels International, Inc., a Delaware corporation" *Id.* pg. 1.

Finally, the Agreements contain an attorney's fees provision that provides a losing party in an Arbitration may be required to pay all arbitration fees. *Id.* § 16 ("The prevailing party (as determined by the court or arbitrator) in any arbitration or claim filed to enforce the terms of this Agreemenet will recover from the other party the reasonable expenses of its attorneys . . . along with any court costs, arbitration costs, arbitrator fees, the reasonable costs of necessary expert witnesses, and the reasonable travel costs (including food and lodging) of the prevailing party's witnesses in the proceeding.

As attested to in the various attached Franchisee Declarations, which are presented as exemplars of the experience of Franchisees, the arbitration clauses were presented on a take-it-or-leave-it basis, and were not the subject of any negotiation. *See* Declaration of Justin E. Proper, Ex. E. ("Franchisee Declarations"). The vast majority of the Franchisees were not represented by counsel in their negotiations with Choice. *Id.*

Prior to the Covid-19 pandemic, the majority of the Franchisees operated modestly profitable hospitality businesses. *Id.* However, even prior to the Covid-19 pandemic, the majority of Franchisees could not have afforded the arbitration fees required in this case. *Id.* In light of the Covid-19 pandemic, Franchisees have suffered enormous economic hardship; the vast majority of them are operating at a substantial financial loss, and are only able to stay afloat due to CARES Act loans. *Id.* The Franchisees have only been able to afford attorney's fees in this litigation due to a deep discount on counsel's normal fee. *Id.* The Franchisees have each arranged to pay counsel a flat fee of $7,500 per hotel property involved in the suit, and a modest

contingency fee on any monetary award or settlement obtained in this action.  *See* Proper Decl. at ¶ 3.  The flat fee of $7,500, which represents a profound discount on Mr. Proper's normal rate of $540 per hour, Ms. Molz's normal rate of $340 per hour, and Mr. Fedullo's normal rate of $325 per hour.  *Id*. at ¶ 4.  Further, for many of the Franchisees, the payment of $7,500 was itself a significant financial strain, necessitating entering into a payment plan with counsel.  *Id*. at ¶ 5.

## II.   STATEMENT OF THE QUESTIONS INVOLVED

1.   Should this Court deny Defendants' motion to compel arbitration, when the Arbitration Clause would prevent the effective vindication of Franchisees' federal statutory rights by denying Franchisees access to *any* pre-hearing discovery, and requiring them to pay arbitration costs that they cannot afford?

Suggested answer: Yes.

2.   Should this Court deny Defendants' motion to compel arbitration, when the Arbitration Clauses in the Franchise Agreements are procedurally and substantively unconscionable, in that they constitute contracts of adhesion and, *inter alia*, require Franchisees to forego all pre-hearing discovery, to conduct any arbitrations on an individualized basis in the physical headquarters of Choice Hotels, to pay substantial and unaffordable arbitration costs, and are not fully mutual?

Suggested answer: Yes.

3.   Should this Court deny Defendant CHOC's motion to compel arbitration, when CHOC is not a party to any of the Franchise Agreements, and the Franchise Agreements expressly state that they do not benefit third parties?

Suggested answer: Yes.

4.   In the alternative, if this Court chooses to compel arbitration, should it deny Defendants' request to force *all* Franchisees into *individualized* arbitration, when, as Defendants

have conceded, approximately a third of the Franchise Agreements at issue lack a class action waiver?

      Suggested answer: Yes.

## III.    <u>SUMMARY OF THE ARGUMENT</u>

      As a threshold matter, the parties are in agreement that the Court must decide the threshold issue of arbitrability.  Defendants ask this Court to enforce Arbitration Clauses that plainly would prevent Franchisees from effectively vindicating their statutory claims. While arbitration typically allows less discovery than would be available in court, Courts across the country have recognized that, in order to be valid, arbitration provisions must allow more than minimal discovery. Here, the Arbitration Clauses, which are unilaterally drafted by Choice as part of adhesive, unconscionable Franchise Agreements, absolutely prohibits *any* pre-hearing discovery except by mutual consent of the parties. This absolute prohibition clearly grievously prejudices Franchisees' ability to prosecute the complex federal claims involved in this case. Additionally, the Arbitration Clauses prevent the effective vindication of Franchisees' claims by imposing prohibitively expensive arbitration fees on them.

      In addition to preventing the effective vindication of Franchisees' rights, the Arbitration Clauses are procedurally and substantively unconscionable under Maryland law. They are procedurally unconscionable insofar as they are part of an adhesive form Agreement, and were presented on a take-it-or-leave it basis to parties with weaker bargaining power, who were largely unrepresented by counsel. The Arbitration Clauses are procedurally unconscionable insofar as they prohibit pre-hearing discovery, impose arduous costs on Franchisees, lack mutuality of obligation, and effectively exculpate Choice from liability under state franchise laws.

Further, even if this Court were to find that *Choice* has a right to compel arbitration, CHOC has no such right. CHOC is not a party to the Franchise Agreements, and said Agreements contain clear language disclaiming any third party benefit.

Finally, in the alternative, if this Court finds that certain provisions of the Arbitration Clause are unconscionable, it may sever them.

## IV.   **ARGUMENT**

### A.   **Legal Standard**

Courts addressing a motion to compel apply either the motion to dismiss standard articulated by Federal Rule of Civil Procedure 12(b)(6), or the summary judgment standard articulated by Federal Rule of Civil Procedure 56 ("Rule 56"). "Where the affirmative defense of arbitrability of claims is apparent on the face of a complaint (or documents relied upon in the complaint)…the FAA would favor resolving a motion to compel arbitration under a motion to dismiss standard without the inherent delay of discovery." *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 773-74 (3d Cir. 2013) (quoting *Somerset Consulting, LLC v. United Capital Lenders, LLC*, 832 F. Supp. 2d. 474, 481 (E.D.Pa. 2011). However, "when the complaint and incorporated documents facially establish arbitrability but the non-movant has come forward with enough evidence in response to the motion to compel arbitration to place the question in issue . . . . the issue should be judged under the Rule 56 standard." *Id.* Under the Rule 56 standard, "the relief sought by a moving party is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp v. Catrett,* 477 U.S. 317, 322 (1986). Here, while Franchisees acknowledge that the Franchise Agreements contain Arbitration Clauses,

Franchisees offer evidence to challenge the enforceability of the Clauses. Accordingly, a Rule 56 standard should apply.

**B.      The Arbitration Clauses Violate the Effective Vindication Rule**

The Arbitration Clauses are unenforceable against the Franchisees because they violate the effective vindication doctrine. The effective vindication doctrine is an exception to the general presumption in favor of arbitrability under the Federal Arbitration Act, serving to prevent "prospective waiver of a party's right to pursue statutory remedies." *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 236 (2013). The effective vindication rule is not an outgrowth of state unconscionability laws. *Id.* (noting that courts invoke the effective vindication rule on public policy grounds); *see also Mohammad v. Uber Techs, Inc.*, 836 F.3d 1102, 1112 (9th Cir. 2016) (noting that the effective vindication doctrine is separate from state unconscionability analysis). Rather, the effective vindication doctrine is designed to resolve tensions between the Federal Arbitration Act and other federal statutes. *Torres v. CleanNet U.S.A. Inc.*, 90 F. Supp. 369, 379 (E.D. Pa. 2015) (citing *Italian Colors*, 570 U.S. at 252 (Kagan, J., dissenting)). Essentially, the doctrine seeks to harmonize (1) the ability of parties to enforce arbitration agreements, as provided for in the FAA, and (2) the right to pursue remedies created by federal statute. *Id.*

The Franchisees submit that the Arbitration Clauses prevent the effective vindication of their federal statutory rights in two key respects. First, the Arbitration Clauses all straightforwardly allow Choice to withhold any prehearing discovery. Second, the Arbitration Clauses require that the Franchisees pay arbitral costs that they cannot afford. Because of these two factors, the Arbitration Clauses act, essentially, as a prospective waiver of the Franchisees rights under federal statutes. Accordingly, they cannot be enforced.

25110035v.1

1.      **The lack of pre-hearing discovery serves as a barrier to the effective vindication of Franchisees' claims.**

The Arbitration Clauses in all the Agreements are clear: absent consent of all the parties, no pre-hearing discovery of any kind is permitted.   Specifically, each Arbitration Clause provides that any arbitration will be conducted

> [I]n accordance with the Commercial Arbitration Rules of the American Arbitration Association, including its rules for emergency measures of protection, except to the extent that the Commercial Rules of the American Arbitration association may be interpreted to require you or us to produce documents, witness, or information at a time other than at a hearing on the claim without our mutual consent.

This absolute prohibition of *any* pre-hearing discovery is draconian.   Choice holds all the information that Franchisees need to prove their cases, and yet Choice seeks to deny Franchisees access to that critical information.   The prohibition on discovery thus effectively destroys Franchisees' very ability to substantiate or vindicate their claims.   The Eastern District of Virginia addressed a similar arbitration provision in *Winston v. Academi Training Ctr.*, 2013 U.S. Dist. LEXIS 34850, at *5 (E.D. Va. Mar. 13, 2013) and concluded that it was unenforceable on this very basis.   The court held that the arbitration provision's prohibition on discovery precluded the effective vindication of plaintiffs' rights, reasoning: "[False Claims Acts] claims are often document intensive. In this case, the Plaintiffs claim that Academi was falsely certifying contractors as having passed the firearms training.   It will be difficult, if not impossible, to prove those claims without the allegedly falsified documents.   And it will be difficult, if not impossible, to obtain those documents without discovery."   *Id*.   The same reasoning applies with equal force here.

Given that Choice is in possession of the vast majority of evidence that would be relevant to Franchisees' claims against them, this prohibition on discovery effectively destroys Franchisees' very ability to substantiate or vindicate their claims.   The Arbitration Clause allows

-8-

Choice to produce whatever evidence it wants at a hearing to defend itself, while leaving Franchisees with no recourse to challenge or raise discovery deficiencies in the midst of an arbitration hearing, much less perform a meaningful review as they are presenting their case. The same holds true for any dispositive motions, which are specifically provided for by the AAA Commercial Rules.  Without discovery, it is virtually impossible for Franchisees to defend against dismissal on a motion for summary judgment, or to prove their claims at an arbitration hearing.  Each of the Franchisees' federal statutory claims requires Franchisees to prove complicated issues of fact. Franchisees' ability to meet their burdens—and hence, to effectively vindicate their federal claims—would thus be grievously prejudiced by denial of pre-hearing discovery.

Further, courts have found that even limitations on discovery laxer than the Arbitration Clause's thoroughgoing prohibition constitute barriers to the effective vindication of parties' claims.

> **a.      Denial of pre-hearing discovery would grievously prejudice Franchisees' ability to effectively vindicate their federal statutory claims.**

Each of Franchisees' statutory claims—Counts I-IV (RICO), VIII (Sherman Act), and X (42 U.S.C. § 1981)—require that Franchisees present evidence that is primarily in the possession of Choice and CHOC. The complexity of each statutory action renders the lack of pre-hearing discovery highly prejudicial to Franchisees' ability to effectively vindicate their actions. Without pre-hearing discovery, Franchisees will be forced to comb through, analyze, and present as evidence complex financial and other documents and records "on the fly" at the arbitration hearing. This will unnecessarily extend the arbitration hearing—adding significant expense—and prejudice the ability of the Franchisees to effectively vindicate their statutory rights.

It is well-established that RICO claims "generally involve complex issues." *Northland Ins. Co. v. Shell Oil Co.*, 930 F. Supp. 1069, 1074 (D.N.J. 1996); *see also Irish v. Ferguson*, 970 F. Supp. 2d 317, 344 (M.D. Pa. 2013) ("The provisions of RICO encompass complex crimes involving multiple elements."). In order to prove their RICO claims, Franchisees will have to prove the predicate offenses alleged therein, specifically mail and wire fraud. Additionally, in order to prove the Choice-CHOC RICO counts (FAC Counts I & II), Franchisees will have to prove that Choice and CHOC conspired together, and constituted an association-in-fact enterprise; in order to prove the Choice RICO counts (FAC Counts III & IV), Franchisees will have to prove that Choice conspired with various non-party qualified vendors, and, with those vendors, constituted an association-in-fact enterprise. Thus, in order to prove their claims, Franchisees will have to prove facts about Choice and CHOC's mental states,[1] and communications and agreements between both Choice and CHOC and Choice and third-parties. It would be exceedingly difficult to prove these claims without access to pre-hearing discovery. Accordingly, denial of pre-hearing discovery would prevent the effective vindication of Franchisees' rights under the RICO statute.

In order to prove their under the Sherman Act claim, Franchisees must show the existence of a tying relationship. "[T]ying exists when a seller of product A requires his purchasers to take product B as well." *F.B. Leopold Co. v. Roberts Filter Mfg. Co*, 882 F. Supp. 433, 453 (W.D. Pa. 1995) (quoting R. Bork, Antitrust Paradox at 365 (1993) and citing *Allen Myland Inc. v. International Business Machines Corp.*, 33 F.3d 194, 200 (3d Cir. 1994), *cert. denied*, 115 S. Ct. 684 (1994)). The tying arrangement violates the Sherman Act when "the seller has appreciable economic power in the typing product market and if the arrangement affects a

---

[1] The elements of wire fraud, a predicate RICO offense, are: "(1) the defendant's knowing and willful participation in a scheme or artifice to defraud, (2) with the specific intent to defraud, and (3) the use of interstate wire communications in furtherance of the scheme." *United States v. Andrews*, 681 F.3d 509, 517 (3d Cir. 2012).

substantial volume of commerce in the tied market." *Eastman Kodak Co. v. Image Technical Servs., Inc.* 504 U.S. 451, 462 (1992). Franchisees will thus be prejudiced if they are denied pre-hearing discovery, as they will be unable to obtain documents and records demonstrating Choice's power in the relevant markets. Again, the lack of pre-hearing discovery would serve as a bar to Franchisees' effective vindication of their claims.

Finally, Franchisees claims under 42 U.S.C. § 1981 clearly would not be effectively vindicated without access to documents and records in Choice and CHOC's possession. Franchisees allege that Choice and CHOC have given preferential treatment to franchises owned by white hoteliers, including, *inter alia*, in the discriminatory advancement of key money and the uneven enforcement of Choice's Rules and Regulations. FAC ¶ 437. To prove these claims, Franchisees will clearly need Defendants' records, documents, and testimony in order to show that Choice and CHOC in fact preferentially treated franchises owned by white hoteliers. For all these reasons, the lack of pre-hearing discovery will prejudice the effective vindication of Franchisees' claims.

>  **b.      Courts have found that laxer limitations on discovery than those contained in the Arbitration Clauses prevent the effective vindication of statutory claims.**

The prohibition on pre-hearing discovery is fatal to the enforceability of the Arbitration Agreement. Although the discovery provided in arbitration need not be as complete as the discovery available in court, the Supreme Court has held that discovery in arbitration agreements may not be "insufficient to allow . . . claimants . . . a fair opportunity to present their claims." found that a party may effectively vindicate their federal statutory claims when the arbitral forum provides for adequate discovery. *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 30-31 (1991). The D.C. Circuit Court of Appeals has interpreted *Gilmer* as creating a factor test for

determining whether an arbitration agreement fails to allow litigants to effectively vindicate their claims:

> In particular, we note that the arbitration arrangement (1) provides for neutral arbitrators, (2) *provides for more than minimal discovery*, (3) requires a written award, (4) provides for all of the types of relief that would otherwise be available in court, and (5) does not require employees to pay either unreasonable costs or any arbitrators' fees or expenses as a condition of access to the arbitration forum.

*Cole v. Burns Int'l Sec. Servs.*, 105 F.3d 1465, 1482 (DC Cir. 1997) (emphasis added); *see also Promega Corp. v. Life Techs. Corp.*, 674 F.3d 1352, 1358 (Fed. Cir. 2012) ("A lack of discovery is no basis to find that a statutory claim is inarbitrable *so long as there is sufficient discovery available to those who enjoy statutory rights to vindicate their claims in arbitration*" (emphasis added) (quoting 1 Thomas H. Oehmke, Commercial Arbitration § 10:12 (3d ed. 2004)); *Goff v. G2 Secure Staff LLC*, 2013 U.S. Dist. LEXIS 59628, at *9 (C.D. Cal. April 22, 2013) (quoting the *Cole* factors)  *O'Hanlon v. JPMorgan Chase Bank, N.A.*, 2015 U.S. Dist. LEXIS 137213, at *17 (C.D. Cal. Oct. 7, 2015) ("Leaving discovery at the arbitrator's discretion—without any indication of what kind of law or rules the arbitrator will apply to limit that discretion—does not protect the employee's entitlement to sufficient discovery for effective vindication of statutory rights."); *Ostroff v. Alterra Healthcare Corp.*, 433 F. Sup.. 2d 538, 543 (E.D. Pa. 2006) (citing *Cole* for the proposition that, where there are severe restrictions on discovery, an arbitration clause may be unenforceable).

Courts in and outside this Circuit have found that laxer restrictions on discovery than the absolute prohibition contained in the Arbitration Clauses prevent the effective vindication of statutory rights. In *Walker v. Ryan's Family Steak Houses, Inc.,* the Sixth Circuit Court of Appeals found that an arbitration agreement that, *inter alia*, provided for only one deposition by each party as of right, prevented the effective vindication of an employees' right to pursue

-12-

federal anti-discrimination and Fair Labor Standard Act claims. 400 F.3d 370, 387-88 (6th Cir. 2005), *cert. denied sub nom* 546, U.S. 1030, 1030 (2005). The Sixth Circuit found that, although the arbitration agreement at issue allowed the arbitral panel discretion to permit the taking of additional depositions, the discovery was still inadequate, in part because the record suggested that the panel was likely biased and would not permit the employee additional discovery. *Id.* Similarly, in *Ostroff*, the court found that an arbitration agreement that permitted a plaintiff to take depositions of *only* the defendant's expert was not enforceable, even though the agreement allowed the taking of other forms of discovery under the Pennsylvania Rules of Civil Procedure. 433 F. Supp. 2d, at 545.[2]  Here, the absolute prohibition on pre-hearing discovery is obviously significantly more restrictive than the limitations on discovery found unenforceable in *Walker* and *Ostroff*.  The restriction on discovery clearly grievously prejudices Franchisees' ability to effectively vindicate their statutory rights. Accordingly, the Arbitration Clauses should not be enforced.

> **2.    Individual arbitration costs would be prohibitively expensive, thus the Arbitrations Clauses prevent the effective vindication of the Franchisees' claims.**

The Arbitration Clauses also violate the effective vindication rule, because individual arbitration would be prohibitively expensive. The Supreme Court recognized in *Green Tree Financial Corp.-Alabama v. Randolph*, "the existence of large arbitration costs could preclude a litigant . . . from effectively vindicating her federal statutory rights in the arbitral forum." 531 U.S. 79, 90 (2000); *see also Am Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 236 (2013) (noting that the effective vindication doctrine "would perhaps cover filing and administrative fees attached to arbitration that are so high as to make access to the forum impracticable").

---

[2] *Ostroff* analyzed the issue under a substantive unconscionabiltiy standard; however, it explicitly considered whether the lack of discovery would prevent a plaintiff from vindicating their claims. *Id.*

Our Court of Appeals has found that an arbitration provision that "makes the arbitral forum prohibitively expensive for a weaker party cannot be enforced under the effective vindication doctrine. *Parilla v. IAP Worldwide Servs. VI, Inc.*, 368 F.3d 269, 284 (3d Cir. 2004) (remanding to the district court to permit the taking of limited discovery to determine whether enforcement of an arbitration provision would be prohibitively expensive); *see also Bradford v. Rockwell Semiconductor Sys., Inc.*, 238 F.3d 549, 556 (4th Cir. 2001) (noting, in considering whether an arbitration's allegedly excessive fees made an arbitration agreement unenforceable, that the analysis rested "upon the claimant's ability to pay the arbitration fees and costs, the expected cost differential between arbitration and litigation in court, and whether that cost differential is so substantial as to deter the bringing of claims."). In order to invalidate an arbitration provision on the grounds of prohibitive expense, a party must: "(1) come forward with some evidence to show the projected fees that would apply to their specific arbitration and (2) show the party's inability to pay those costs." *Hall v. Treasure Bay V.I. Corp.*, 371 Fed. Appx. 311, 313 (3d. Cir. 2010).

Here, Defendants will likely argue that arbitration will result in a cost savings to Franchisees because they will incur less attorneys' fees in arbitration than they otherwise would in court. This is incorrect. Under the Franchisees' agreement with counsel, the Franchisees' modest out-of-pocket expenses are capped at $7,500 per property regardless of the forum. Thus Franchisees' legal fees are identical in both forums. What is not identical, and what Franchisees simply cannot afford (as set forth in the attached Declarations) are the arbitration costs and fees.

The Franchise Agreements incorporate the AAA Commercial Arbitration Rules which, in turn, provide the following regarding the allocation of arbitration costs:

> The expenses of witnesses for either side shall be paid by the party producing such witnesses. All other expenses of the arbitration, including

> required travel and other expenses of the arbitrator, AAA representatives, and any witness and the cost of any proof produced at the direct request of the arbitrator, shall be borne equally by the parties, unless they agree otherwise or unless the arbitrator in the award assesses such expenses or any part thereof against any specified party or parties.

Proper Decl., Ex. A (AAA Commercial Arbitration Rule 54). The Commercial Arbitration Rules thus indicate that each party shall bear the costs associated with producing their witnesses, and that the other costs associated with the arbitration shall be borne equally by the parties (at least in the first instance) unless the parties agree otherwise. The Rules further indicate that the initial filing fee is payable in full by the filing party when the claim is filed, and the "final fee" is payable in advance at the time the first hearing is scheduled. *Id.*, Ex. A (Rule 53) (providing "[t]he filing fee shall be advanced by the party or parties making a claim or counterclaim, subject to final apportionment by the arbitrator in the award"); *Id.*, Ex. B. at p 2 ("The Final Fee will be incurred for all cases that proceed to their first hearing and is payable in advance at the time the first hearing is scheduled."). Therefore, based on the terms of the Franchise Agreements and the AAA Commercial Arbitration Rules, it appears that, if forced to arbitrate their claims, Plaintiffs would be responsible for paying 100% of the costs associated with producing their witnesses, 100% of the filing fee at the initiation of the arbitration, and 100% of the final fee in advance of the first hearing.

The administrative fees associated with an AAA arbitration are much higher than any filing fee in court. While, due to Defendants' fraud and deception, the individual Franchisees do not, at this time, know the full extent of their damages, as they do not know the exact amounts above market-rate that the Qualified Vendors have charged them for the Necessary Products, they estimate that their individual damages are in the hundreds of thousands. Given that the RICO provides for the trebling of damages, individual Franchisees may in fact be entitled to

-15-

damages in excess of a million dollars.  Under the AAA fee schedule, claims of an undetermined monetary amount (as well as claims between one million and ten million dollars) require an initial filing fee of $7,700 and a final administrative fee of $8,475. *See id.*, Ex. B.  Thus, each individual Franchisee will be required to pay $16,175 in administrative fees (($7,700 + $8,475).[3] The administrative fees required by the AAA are especially high when compared to the $400 fee that was required to file a Complaint in this Court.

The AAA fees become truly cost prohibitive, however, when the hourly fees charged by the private arbitrator are considered.  Plaintiffs would be required to pay one-half of the hourly fees determined by the individual arbitrator for travel, hearing attendance, study of the parties' submissions before and after the hearing, and preparation of the award.  Although courts charge plaintiffs an initial (nominal) filing fee, they do not charge extra for in-person hearings, discovery requests, routine motions, or written decisions—costs that are all common in the world of private arbitrators.  For instance, AAA commercial arbitrators generally command anywhere between $400 and $875 per hour, which amounts to roughly $2,800-$6,125 per day of services. Proper Decl. at ¶ 9.  Every conference call or correspondence generated is additionally billed to the parties on a pro-rated basis as one would expect given the profit-driven nature of the private arbitration business. Given the complexity of the statutory claims asserted here—claims under the RICO Act, the Sherman Act, and civil rights law, which all admit of complicated theories of proof—the hearing could easily last for multiple weeks.  *Id.* at ¶ 9.  Assuming, conservatively, a two-week arbitration, and two days of the arbitrator's services deciding pre-arbitration motions, each individual Franchisees' fees could range from $16,800 (($2,800 x 12) / 2) to $36,750

---

[3] Plaintiffs note that while the AAA rules provide that "[t]he AAA may, in the event of extreme hardship on the part of any party, defer or reduce the administrative fees" – this alone is insufficient to render the AAA arbitration affordable. *See* AAA Commercial Arbitration Rules, § R-53.  The administrative fees pale in comparison to the hourly fees charged by the arbitrators, and for which there is no waiver.

(($6,125 x 12) / 2).  *Id.* at ¶¶ 9-10.[4]  Again, conservatively, Franchisees thus must expend at minimum $32,975 (the $16,175 administrative fee plus their share of the arbitrator's fee) in order to arbitrate their claim.  As shown in Franchisees' Declarations, Franchisees simply cannot afford these expected fees, preventing them from effectively vindicating their claims. Proper Decl. Ex. E.

Similarly, the initial filing fee for a JAMS arbitration is $3,000 for matters involving three or more parties.  *See id*., Ex. C.  Thereafter, a "Case Management Fee" of 12% will be assessed against all professional fees charged by the arbitrator, including any time spent for hearings, pre- and post-hearing reading and research, and award preparation.  *Id.*  Assuming, again, a $400-875 hourly rate for a JAMS arbitrator, a two week hearing, with two days of pre- and post-hearing review of the parties' submissions, individual Franchisees' fees could range from $18,816 ((($2,800 x 12) x 1.12) / 2) to $41,160 ((($6,125 x 12) x 1.12) / 2).  Combined with their share of the $3,300 filing fee, conservatively, at JAMS, the individual Franchisees will have to pay a minimum of $20,466 to arbitrate their claim.

Finally, National Arbitration Forum (now renamed "the Forum"), requires administrative fees of $10,000, in addition to arbitrator's fees.  *Id.*, Ex. D.  Additionally, when there are more than two parties to the suit, the National Arbitration Forum can assess unspecified additional fees. Given the above calculations, individual Franchisees fees, together with their share of the administrative fees, could have ranged from $21,800 to $41,750.

There is no doubt that the arbitration fees (no matter the forum) would be excessively high for the Plaintiffs in comparison to the $400 filing fee to be before this tribunal.  More importantly, Plaintiffs are simply unable to pay the likely fees associated with arbitrating their

---

[4] These figures all assume that the arbitrator's fees will be borne equally by Franchisees and Defendants. But, under Section 16 of the Agreements, Franchisees are in jeopardy of being required to pay *all* the arbitrator's fee, if the arbitrator should find that Choice is a prevailing party.

claims given their limited financial means.  Proper Decl., Ex. E.  The arbitration fees thus amount to a substantial financial burden that would be so costly as to preclude Plaintiffs from effectively vindicating their rights in the arbitral forum.  Furthermore, Defendants have provided no assurances that Plaintiffs would not be required to pay prohibitive costs should this Court compel arbitration.  Thus, the excessively high costs coupled with Defendants' lack of assurances that Plaintiffs would not be required to pay prohibitive costs are further evidence of the arbitration provisions' substantive unconscionability.

To the extent Defendants argue, and this Court finds, that Plaintiffs have failed to overcome their burden of showing that the fees associated with arbitrating their claims are cost prohibitive, Plaintiffs respectfully request the right to conduct limited discovery on this issue. *Blair v. Scott Specialty Gases*, 283 F.3d 595, 610 (3d Cir. 2002) ("Limited discovery into the rates charged by the AAA and the approximate length of similar arbitration proceedings should adequately establish the costs of arbitration, and give Blair the opportunity to prove, as required under *Green Tree*, that resort to arbitration would deny her a forum to vindicate her statutory rights.").  More specifically, Plaintiffs would seek to discover information relating to the costs and fees incurred by Defendants in the past in connection with arbitrating similar claims brought by franchisees.

### C.     The Arbitration Clauses are Unenforceable Because They are Unconscionable

The Arbitration Clauses are unconscionable under Maryland law, and thus should not be enforced. State law governs written arbitration provisions under the FAA.  *See* 9 U.S.C. § 2 (stating that an arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract"). Without waiver of any conflicts of law issue, Franchisees acknowledge that the various Arbitration Clauses contain

Maryland choice of law clauses. Accordingly, if the arbitration provisions are unconscionable under Maryland law, the Agreements are unenforceable. *See Walther v. Sovereign Bank*, 386 Md. 412, 426, 872 A.2d 735 (2005).

The Court of Appeals of Maryland has recognized that "[a]n unconscionable bargain or contract has been defined as one characterized by 'extreme unfairness,' which is made evident by '(1) one party's lack of meaningful choice, and (2) contractual terms that unreasonably favor the other party.'" *Id. at*. 426, 872 (quoting Black's Law Dictionary 1560 (8th ed. 2004)). Under Maryland law, "a contract is unconscionable only if it is both procedurally and substantively unconscionable." *Mould v. NJG Food Serv*., 986 F. Supp. 2d 674, 678 (D. Md. 2013). Here, the Arbitration Clauses are both procedurally and substantively unconscionable. The Arbitration Clauses are procedurally unconscionable, because they were presented to Franchisees on a take-it-or-leave it, adhesive basis. They are substantively unconscionable, because they deny Franchisees the right to all pre-hearing discovery, are not fully mutual, and constitute a prospective waiver of claims under the Maryland Franchise Law.

> **1.    The Arbitration Clauses are procedurally unconscionable contracts of adhesion.**

The Arbitration Clauses were unconscionable because they constitute contracts of adhesion, offered by a party with vastly superior bargaining power to the Franchisees—Choice—on a take-it-or-leave it basis. "Procedural unconscionability concerns deceptive practices employed at the bargaining table…Thus procedural unconscionability looks to how the agreement was reached. It relates to the individualized circumstances surrounding each contracting party at the time of contracting." *Doyle v. Fin. Am., LLC*, 173 Md. App. 370, 383, 918 A.2d 1266, 1274 (Md. Ct. Spec. App. 2007) (citing *Holloman v. Circuit City Stores, Inc.*, 391 Md. 580, 603, 894 A.2d 547, 560 (Md. 2006)).  When determining whether an agreement is

procedurally unconscionable, a court may consider, *inter alia*: overwhelming bargaining strength, relative bargaining power, and which party drafted the agreement. *Id.* "Assessing procedural unconscionability requires the Court to consider whether each party had 'a reasonable opportunity to understand the terms of the contract' or whether important terms were 'hidden in a maze of fine print.'" *Gordon v. Sterling Jewelers, Inc.*, Civil Action No. GLR-17-559, 2017 U.S. Dist. LEXIS 197681, at *7-8 (D. Md. Nov. 30, 2017)

Although a contract of adhesion is not *per se* void under Maryland law, such a finding is sufficient to establish procedural unconscionability. The Maryland Court of Appeals has recognized that a contract of adhesion is a contract "'that is drafted unilaterally by the dominant party and then presented on a 'take-it-or-leave-it' basis to the weaker party who has no real opportunity to bargain about its terms.'" *Walther v. Sovereign Bank*, 386 Md. 412, 872 A.2d 735, 746 (Md. 2005) (quoting Restatement (Second) of Conflict of Laws § 187 cmt. b (1971)). *See also* Black's Law Dictionary 342 (8th ed. 2004) (defining "adhesion contract" as "[a] standard-form contract prepared by one party, to be signed by the party in a weaker position, [usually] a consumer, who adheres to the contract with little choice about the terms").

Here, the Arbitration Clauses drafted by Choice are clearly contracts of adhesion. Choice, the dominant party, unilaterally drafted the Clauses and repeatedly employed them as a form agreement to bind Franchisees. They constituted part of a form Franchise Agreement, whose terms were not subject to meaningful negotiation. As Franchisees testify in their Declarations, the Arbitration Clauses were presented to them on a take-it-or-leave it basis, without input from Franchisees. *See* Proper Decl. Ex. 8. Further, the vast majority of the Franchisees were not represented by counsel in their dealings with Choice. *Id.* Indeed, Choice's

representations in its Motion to Compel further confirm that these Agreements were contracts of adhesion. Choice notes that

> Each Plaintiff entered into its own Agreement with Choice. Plaintiffs' Agreements have differences . . . none of which are consequential to this Motion. . . .There are also nine variations of the Arbitration Provision, **but they key phrases and words of the Arbitration Provision on which this motion relies are included in all versions.**

Defs.' Motion to Compel at 9 n. 3 (emphasis added). Choice thus acknowledges that the variations between the Arbitration Clauses are minor and have no substantive impact on the analysis of the arbitrability question. Choice does not contend that any of the variations in the precise terms of the Arbitration Clauses were the result of negotiations between itself and the Franchisees. Rather, it is clear that Choice imposed substantially similar Arbitration Clauses on each Franchisee on a take-it-or-leave-it basis. Choice, as a multinational hotel franchisor had vastly superior bargaining power than the individual small businesses that constitute the Franchisees and used this superior bargaining power to require the Franchisees to accept the Arbitration Clauses without negotiation. *See Takiedine v. 7-Eleven, Inc.*, 2019 U.S. Dist. LEXIS 29201, at \*26 (E.D. Pa. Feb. 22, 2019) (Pratter., J.) (noting, in a discussion involving the enforceability of an arbitration provision included in a 7-Eleven franchise agreement, that "7-Eleven cannot dispute that it is more sophisticated than Mr. Takiedine, an individual franchisee"). The Arbitration Clauses are thus, in the final analysis, procedurally unconscionable.

Despite what Defendants may try to argue, the Fourth Circuit's unpublished decision in *Choice Hotels International, Inc. v. Chewl's Hospitality, Inc*., 91 Fed. Appx. 810 (4th Cir. 2003) is no obstacle to Franchisees' argument that the Arbitration Clauses are procedurally unconscionable.  There, the district court confirmed an arbitration award in favor of Choice and rejected Chewl's argument that the arbitration award should be set aside because the arbitration

provision was unconscionable. *Id.* In doing so, the district court ruled that the arbitration provision was not an unenforceable contract of adhesion based upon its findings that Chewl was a sophisticated and experienced hotel franchise owner, that some negotiations took place before the agreement was finalized, and that Chewl willingly accepted the burdens of the franchise agreement. *Id.* at 815. The Fourth Circuit affirmed the district court's decision on appeal and held that "Chewl cannot demonstrate that these findings are clearly erroneous, and they plainly support the conclusion that the arbitration provision was not a contract of adhesion or otherwise unconscionable." *Id.* The Fourth Circuit's decision is thus distinguishable procedurally and factually from the instant case.

> **2.**    **The Arbitration Clauses are so one-sided as to be substantively unconscionable.**

In addition to being procedural unconscionable, the Arbitration Clauses are clearly substantively unconscionable, because their terms inure to the grossly disproportionate benefit of Choice. When considering substantive unconscionability, the courts "examine whether a term is so one-sided as to oppress or unfairly surprise an innocent party or whether there exists an egregious imbalance in the obligations and rights imposed when determining whether it is enforceable." *Walther v. Sovereign Bank*, 386 Md. at 431; *see also Rausch v. Allstate Ins. Co.*, 388 Md. 690,715 (2005) ("[I]f the lease is found to be a contract of adhesion and the provisions are found to be unfair, they may be declared invalid as being in violation of public policy.").

> **a.**    **The Arbitration Clauses waive the right to pre-hearing discovery.**

For essentially the same reasons as those described in *supra* section IV.B.1, the Arbitration Clause's limitations on discovery are substantially unconscionable. Severe restrictions on discovery can be a source of substantial unconscionability. *Clerk v. First Bank*,

735 F. Supp. 2d 170, 181 (E.D. Pa. 2010); *Ostroff v. Alterra Healthcare Corp.*, 433 F. Supp. 2d 538, 543 (E.D. Pa. 2006). Accordingly, the Arbitration Clauses are substantively unconscionable.

**b.      The Arbitration Clauses impose prohibitive arbitration costs.**

For essentially the same reasons as those described in *supra* section IV.B.2, the Arbitration Clause's limitations on discovery are substantially unconscionable. Severe restrictions on discovery can be a source of substantive unconscionability. *Id.; Clerk*, 735 F. Supp. 2d at 181; *see also Bradford v. Rockwell Semiconductor Sys., Inc.*, 238 F.3d 549, 556 (4th Cir. 2001) (noting that an inquiry into arbitration costs as a ground for unconscionability must be "a case-by-case analysis that focuses . . . upon the claimant's ability to pay the arbitration fees and costs, the expected cost differential between arbitration and litigation in court, and whether that cost differential is so substantial as to deter the bringing of claims.").

**c.      The Arbitration Clauses contain a waiver of claim.**

The Arbitration Clauses are additionally unconscionable because they require Franchisees to waive state law claims. The Arbitration Clauses read, in relevant part, "The arbitrator will apply the substantive laws of Maryland, without reference to its conflict of laws provision, except that nothing herein shall be construed to establish independently your right to pursue claims under Maryland's Franchise Registration and Disclosure Law." *See* Lonely Ex. A. § 22. The Arbitration Clauses thus demand application of Maryland law, yet carve out a specific Maryland statute that Choice knows could prove detrimental to it. This exclusion works wholly to the benefit of Choice, because Maryland's Franchise Law imposes affirmative obligations on franchisors, but not franchisees. *See generally* Md. Bus. Reg. Cd. § 14-201 *et seq.* Because the Arbitration Clauses purport to amputate Maryland conflict law from Maryland substantive law, under its terms, Franchisees are likewise unable to claim the protection of their own state

25110035v.1

franchise laws. The Arbitration Clause thus works to exculpate Choice from liability under the Maryland Franchise Law and other state franchise laws.

This exculpation is illegal, unenforceable, and unconscionable. Under Maryland law, there are three circumstances under which an exculpatory clause is unenforceable: "when a party to the contract attempts to avoid liability for intentional conduct or harm caused by reckless, wanton, or gross behavior; when the contract results from grossly unequal bargaining power; and when the transaction is one adversely affecting the public interest." *Adloo v. H.T. Brown Real Estate*, 344 Md. 254, 260 (Md. 1996). Here, all three grounds for invalidating this exculpatory clause are present.

First, the clause clearly contemplates the waiver of liability for intentional conduct, insofar as the Maryland statute prohibits, *inter alia*, a franchisor offering to sell or selling a franchise from (1) "employ[ing] a device, scheme, or artifice to defraud," (2) "mak[ing] an untrue statement of a material fact or omit[ting] to state a material fact necessary in order to make the statement made, in light of the circumstances under which it is made, not misleading", and (3) "engag[ing] in an act, practice, or course of business that operates or would operate as a fraud or deceit on another person" Md. Bus. Reg. Code § 14-229. Additionally, the statute allows a franchisor to escape liability for a material omission or untrue statement only if it can affirmatively prove that it "did not know and, in the exercise of reasonable care, could not have known of the untruth or omission." *Id.* § 14-227(2). It is clear that the Maryland Franchise Law reaches intentional conduct. Further, the Franchisees clearly allege that Choice engaged in intentional and fraudulent conduct in violation of the statute. FAC ¶¶ 493-509. Accordingly, the exculpation fails, and is unconscionable, because it purports to waive liability for Choice's intentional acts.

Second, as explained *supra* section C.1, the Arbitration Clause was procedurally unconscionable, and the bargaining power between the Franchisees and Choice was grossly unequal. Again, the exculpation is unconscionable.

Third, the sale of a franchise conditioned on the waiver of liability under the Maryland Franchise Law is contrary to the public policy and interests of the State of Maryland. Public policy is generally "deducible . . . from constitutional or statutory provisions." *Wholey v. Sears, Roebuck & Co.*, 370 Md. 38, 52 (Md. 2002). In passing the Franchise Law, the Maryland General Assembly made findings that strongly evince Maryland's public policy against contracts exculpating franchisors from liability. The General Assembly found, *inter alia*, that "the widespread sale of franchises has created many investment and business problems." Md. Bus. Reg. Code. § 14-202(a)(1). It further announced that the intent of the Law was, *inter alia* to "prohibit the sale of franchises if the sale would lead to fraud or a likelihood that the franchisor's representations would not be fulfilled; and protect the franchisor-franchisee relationship." *Id.* § 14-202(b)(2),(3).   Further, Maryland's Franchise Law itself forbids franchisors from demanding a release or waiver of liability as a condition of the sale of a franchise. *Id.* § 14-226. Accordingly, it is clear that Choice's exculpation is ineffective and unconscionable.

### d.      The Arbitration Clauses are non-mutual.

An additional ground for substantive unconscionability is that the Arbitration Clauses are not fully mutual. While all of Franchisees' potential claims against Choice are subject to arbitration, Choice retains the right to bring actions against Franchisees for indemnification, or to enforce its intellectual property rights. Further, the class waiver, while technically mutual, inures to the exclusive benefit of Choice, as "companies rarely bring class actions against their customers" and franchisees. *Discover Bank v. Superior Court*, 36 Cal. 4th 148, 161 (Cal. 2005).

25110035v.1

The Franchise Agreements also contain several other one-sided provisions which further demonstrate that the contracts as a whole, including the Arbitration Clauses, unreasonably favor Choice.  For example, the Franchise Agreements provide for Choice's open-ended right to impose additional monthly fees and commissions on Franchisees not specifically disclosed at the time of contracting (Franchise Agreement §§ 4(b)(2), 6(a)); Choice's open-ended right to modify, at its sole discretion, the Rules and Regulations with which Franchisees must comply, upon pain of potential termination or suspension of franchising rights (*Id*. § 6(a));  unequal termination clauses which favor Choice and provide it with a significantly longer period of time to cure any default and the option to immediate terminate Franchisees under certain circumstances (including if the Franchisee violates a vague "loss of goodwill" provision (*Id.* § 10(a)-(b)); and a provision providing for liquidated damages against Franchisee, but not against Choice under any circumstances (*Id.* § 10(d)(2)).

Based on the foregoing, it is clear that Defendants' Motion to Compel Arbitration should be denied because the Arbitration Clauses are both procedurally and substantively unconscionable and thus unenforceable.

### D.    The Arbitration Provisions are Not Enforceable by CHOC

.    CHOC is not a party to the Arbitration Clauses. Nonetheless, CHOC seeks to invoke the ~In order to avoid the operation and effect of this general rule, Defendants nevertheless claim that CHOC, as a non-signatory to the Franchise Agreements, can still compel arbitration of this dispute under the doctrine of equitable estoppel.  Defendants assert that Plaintiffs are equitably estopped from avoiding arbitration because CHOC and Choice Hotels have "a close relationship" and "all of Plaintiffs' claims against CHOC stem from the franchisor/franchisee relationship established by the Agreements." Br. at 26.  This argument fails for several reasons.

First, the Franchisee Agreements make clear that no third-party may derive a benefit from them. "Except as otherwise expressly provided in this Agreement, nothing in this Agreement is intended, nor will anything in this Agreement be deemed, to confer on any person or legal entity other than us or you, or our respective successors and permitted assigns, any rights or remedies under or by reasons of this Agreement." *See* Loney Declaration Ex A, §  20(b). "We" and "us" are defined under the Agreements as "Choice Hotels International Inc., a Delaware corporation." Loney Declaration Ex A,  pg. 1. The Arbitration Clause contains no language extending its application to third-parties. Accordingly, it is clear that third-parties cannot derive a benefit from the Arbitration Clause.

Second, under Maryland law, "[t]he doctrine of equitable estoppel permits non-signatories to enforce an arbitration provision . . . when a signatory must rely on the terms of the written agreement [containing the arbitration clause] in asserting [its] claims." *Griggs v. Evans*, 205 Md. App. 64, 43 A.3d 1081, 1092 (Md. App. 2012) (internal quotation marks and citation omitted)).  The purpose of equitable estoppel is to prevent a party from taking an unfair position: attempting to enforce a contract against a third party, on one hand, while denying that third party access to the contract's arbitration clause, on the other.  *See Griggs*, 43 A.3d at 1092 ("[I]t would be unfair for a party to rely on [a] contract when it works to its advantage, and repudiate it when it works to its disadvantage." (internal quotation marks and citation omitted)).  Thus when a non-signatory seeks to compel a signatory to arbitrate the essential inquiry for the Court is whether or not the plaintiff has asserted claims that allege a breach of duty under the agreement containing an arbitration clause. Here, Plaintiffs' claims against CHOC plainly do not rely upon duties established by the Franchise Agreements.  Nor are Plaintiffs relying on the Franchise Agreements to collect damages from CHOC, while at the same time trying to avoid the

arbitration provisions.  *Griggs*, 43 A.3d at 1095-96 (holding a nonsignatory could not enforce an arbitration agreement under the doctrine of equitable estoppel where none of the claims involved a breach of duties or rights arising from the underlying contract).  Defendants' argument to the contrary is based on its assertion that "all of Plaintiffs' claims against CHOC stem from the franchisor/franchisee relationship established by the Agreements and thus, are intimately founded in and intertwined with the Agreements."  Motion to Compel at 26.  This is plainly insufficient and unsupported by the factual allegations in the First Amended Complaint, as Franchisees claim that CHOC's duties to Franchisees flows not merely from the Agreements, but from its assumed roles as a fiduciary.  Franchisees' claims thus rely on common law duties owed by CHOC to Franchisees.  These duties exist entirely independently of the Franchise Agreements and there is no legal reason to apply the doctrine of equitable estoppel.

   **E.     Even if this Court Compels Arbitration, Not All of the Claims Should Proceed on an Individual Basis**

   Defendants acknowledge that a significant percentage of the Franchise Agreements at issue do not have an express class action waiver which requires bilateral arbitration between the parties to the respective agreement.  Defs.' Memo of Law at 28.  Indeed, only two of the eight Agreements attached to the Loney Declaration contain such a provision. Defendants nevertheless ask this Court to enter an order compelling all Franchisees to submit to an individual arbitration with Defendants.  Defendants' request for such relief should be denied.  First, there is no basis to prevent the Franchisees whose Agreements do not contain class action waivers from continuing their action on a collective basis.  Second, if the remaining Franchisees are forced to arbitrate their claims, they will be unable to effectively vindicate their rights regardless of whether or not they are allowed a collective mechanism to do so.  As set forth above, the Arbitration Clauses are unenforceable on this basis because the total lack of discovery and the prohibitive costs

associated with arbitration would deprive Franchisees of the ability to effectively vindicate their rights.  The Arbitration Clauses are likewise unenforceable on the same grounds because they are procedurally and substantively unconscionable.   Absent a valid and enforceable arbitration provision, therefore, the Court cannot compel the parties to submit to arbitration and Defendants' Motion to Compel Arbitration should accordingly be denied.

## V.   <u>CONCLUSION</u>

For the foregoing reasons, this Court should deny Defendants' Motion to Compel Arbitration and Stay Proceedings with prejudice.  To the extent the Court finds that Plaintiffs have failed to demonstrate that arbitration is cost prohibitive and/or that the Arbitration Clauses are unconscionable, Plaintiffs respectfully request the right to conduct limited discovery on these issues.

WHITE AND WILLIAMS LLP

BY:   <u>/s/ Justin E. Proper</u>
Justin E. Proper
William H. Fedullo
1650 Market Street | One Liberty Place,
Suite 1800 |
Philadelphia, PA 19103-7395
Phone: 215.864.7165
Attorneys for Plaintiffs
Jai Sai Baba LLC, et al.

Dated:  August 12, 2020