UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

JAI SAI BABA LLC, *et al.*,          :
            Plaintiffs,              :
                      :
     v.                               :          No. 5:20-cv-02823
                      :
CHOICE HOTELS INTERNATIONAL INC. and :
CHOICE HOTEL OWNERS COUNCIL,         :
            Defendants               :

_____

**O P I N I O N**
**Defendants' Motion to Compel Arbitration and Stay Proceedings, ECF No. 8 – Granted**

**Joseph F. Leeson, Jr.**                                          **March 19, 2021**
**United States District Judge**

## I.      INTRODUCTION

The above-captioned action involves claims by hotel franchisees against the hotel

franchisor and the association of franchisees for violations of federal and state laws.  Each

Plaintiff signed a Franchise Agreement containing an Arbitration Provision.  Defendants have

filed a Motion to Compel Arbitration and Stay Proceedings.  The parties agree that the

Arbitration Provisions apply to the claims in this action, but Plaintiffs assert that they should not

be enforced.  For the reasons set forth below, the Motion to Compel Arbitration and Stay

Proceedings is granted.

## II.     BACKGROUND

Plaintiffs are ninety franchisees that each own and operate one or more hotels that bear a

brand mark of Defendant Choice Hotels International, Inc. ("Choice").  Am. Compl. ¶ 5, ECF

No. 6.  Choice is a hotel franchisor that owns several well-known national hotel brands,

including Comfort Inn, Comfort Suites, Quality Inn, Sleep Inn, Clarion, Cambria Suites,

MainStay Suites, Suburban Extended Stay Hotels, EconoLodge, Rodeway Inn, and Ascend Hotel Collection. *Id.* ¶ 3. Defendant Choice Hotels Owners' Council ("CHOC") is an association of franchisees. *Id.* ¶ 19.

In a 591-paragraph amended complaint, Plaintiffs bring twenty-one counts for violations of the Racketeer Influenced and Corrupt Practices Act ("RICO"), 18 U.S.C. § 1962(c)-(d); the Sherman Act, 15 U.S.C. § 1; the Civil Rights Act, 42 U.S.C. § 1981; breach of contract and fiduciary duty; common law fraud; and various state franchise acts. Plaintiffs assert Defendants are liable for requiring them to pay inflated prices to third-party vendors for products necessary to the operation of their hotels, requiring Plaintiffs to abide by a variety of unconscionable franchise terms and practices, discriminating against franchises owned by hoteliers of Indian-American and South Asian American background, and attempting to obstruct Plaintiffs from leaving the franchise system by imposing onerous liquidated damages provisions and assessing excessive penalties against departing franchises. Plaintiffs allege, *inter alia*, Choice "has and continues to engage in unconscionable, fraudulent, unlawful, and anticompetitive business practices in connection with the operation of its hotel franchise system." Am. Compl. ¶ 1. They allege Choice, which has an ongoing relationship with CHOC, corrupts CHOC "by providing various benefits to members of its board in order to secure their support of Choice's oppressive agenda." *Id.* ¶¶ 19, 289. Plaintiffs allege "Choice dictates to CHOC board members what proposed measures they will approve, and in exchange offers substantial kickbacks to those board members, including preferential treatment in CHOC's reservation system." *Id.* ¶ 291. The Amended Complaint states "Defendants intentionally and willfully deprived [Plaintiffs] of the same rights enjoyed by white citizens to the creation, performance, enjoyment, and all benefits of their contractual relationships with Defendants." *Id.* ¶ 438.

Plaintiffs further allege "Choice was in individual contractual relationships with each Franchisee through the Franchise Agreements." *Id.* ¶ 375.  Plaintiffs acknowledge that the Agreements "require[] Franchisees to submit to binding arbitration . . . in Choice's Maryland headquarters, regardless of where their franchise is located." *Id.* ¶¶ 244-245.  Plaintiffs allege, however, that "Choice and CHOC conspired to fraudulently represent to Franchisees that CHOC was a good faith representative of their interests in order to induce them into entering the Agreements and acquire from them a monthly association fee." *Id.* ¶ 316; *See also* ¶ 306.  The Amended Complaint states that "Choice uses its superior bargaining power to coerce the Franchisees into accepting onerous, unequal, and unconscionable terms in its Franchise Agreements." *Id.* ¶ 140.  It alleges:

> the terms of the Franchise Agreements and Choice's "Rules and Regulations" (which Choice routinely updates and uses an extension of the Franchise Agreements in order to expand the terms of the original agreement, including but not limited to through the imposition of additional fees not specifically disclosed at the time of contracting) are in combination so burdensome to Franchisees and so one-sided in favor of Choice that they must be regarded as unconscionable and unenforceable.

*Id.* ¶ 281.

Defendants have filed a Motion to Compel Arbitration and Stay Proceedings, arguing that all of Plaintiffs' claims are subject to valid and binding mandatory arbitration clauses contained within each Plaintiff's Franchise Agreement.  Mot., ECF No. 8.  In response, Plaintiffs acknowledge the presence of Arbitration Provisions, but contend that the Provisions should not be enforced.  Resp., ECF No. 9.  Plaintiffs further assert that the Arbitration Provisions are not enforceable by CHOC and that if arbitration is compelled, all claims should not proceed on an individual basis.  *Id.* 26-28.  Defendants filed a reply opposing Plaintiffs' arguments and

highlighting that Plaintiffs do not challenge whether their claims are covered by the binding

Arbitration Provision.  Reply, ECF No. 10.

Upon review of the Motion and responses, as well as the Amended Complaint and the

Franchise Agreements that are integral to the claims, the Court notes as follows:

The parties agree that the Arbitration Clauses in all of the Agreements are identical in

substance with regards to the issues in the instant Motion.  *See* Mot. 3-4; Resp. 2.  The

Arbitration Clauses read:

> 21. <u>Arbitration.</u> Except for our claims against you for indemnification or actions
> seeking to enjoin you from using any of our Intellectual Property (including the
> Brand Mark) or the Choice-Related Words in violation of this Agreement or any
> other related agreements (including the Online Terms of Use), any controversy or
> claim arising out of or relating to this Agreement or any other related agreements,
> or the breach of this Agreement or any other related agreements, including any
> claim that this Agreement or any part of this Agreement or any related agreements
> is invalid, illegal, or otherwise voidable or void, as well as any claim that we
> violated any laws in connection with the execution or enforcement of this
> Agreement or any related agreements and any claims for declaratory relief, will be
> sent to final and binding arbitration in the state of Maryland before either the
> American Arbitration Association, J.A.M.S., or National Arbitration Forum in
> accordance with the Commercial Arbitration Rules of the American Arbitration
> Association, including its rules for emergency measures of protection, except to the
> extent that the Commercial Rules of the American Arbitration Association may be
> interpreted to require you or us to produce documents, witnesses, or information at
> a time other than at a hearing on the claim without our mutual consent. In the event
> more than one demand for arbitration is filed in connection with this Agreement or
> any related agreements, the demand filed with the American Arbitration
> Association, J.A.M.S., or National Arbitration Forum office having jurisdiction
> over Maryland proceedings shall take precedence, and any other demand shall be
> withdrawn and presented in the Maryland filing. The arbitrator will apply the
> substantive laws of Maryland, without reference to its conflicts of law provision,
> except that nothing herein shall be construed to establish independently your right
> to pursue claims under Maryland's Franchise Registration and Disclosure Law.
> Judgment on the arbitration award may be entered in any court having jurisdiction.
> If any party fails to appear at any properly noticed arbitration hearing, an award
> may be entered against the party, notwithstanding its failure to appear. Any
> arbitration will be conducted at our headquarters office in Maryland and the parties
> agree that any state laws attempting to prohibit arbitration in Maryland are pre-
> empted by the Federal Arbitration Act. Nothing in this Section 21 will be construed
> as requiring you or us to make a claim in arbitration before exercising any rights

you or we may have to give notice of default or termination in accordance with the terms of this Agreement or any related agreements.

*See* Jai Sai Baba LLC Agreement ¶ 21, Ex. A, ECF No. 8-3.  The parties also agree that a majority of the Franchise Agreements contain a class action waiver provision.  *See* Mot. 28; Resp. 1.  When included, the Class Action Provision states:

> 22. <u>NO CLASS ACTIONS</u>. Neither you nor we shall seek to litigate or arbitrate against the other party to this Agreement or such party's affiliates, either as a representative of, or on behalf of, any other person, class, or entity, any dispute, controversy, or claim of any kind arising out of, or relating to, this Agreement, the rights and obligations of the parties, the sale of the franchise, or other claims or causes of action relating to the performance of either party to this Agreement. No arbitration or other action or proceeding under this Agreement shall add as a party, by consolidation, joinder, or in any other manner, any person or party other than us and you and any person in privity with, or claiming through, in the right of, or on behalf of, us or you, unless both we and you consent in writing. We have the absolute right to refuse such consent. You agree and acknowledge that any proceeding directly or indirectly arising from or relating to this Agreement, the relationship between the parties, or any Agreement or relationship between you and us or any affiliate of ours will be considered unique on its facts and may not be brought as a class or group action.

*See* Jai Sai Baba LLC Agreement ¶ 22.

The Franchise Agreements also contain varying provisions regarding the franchise association.  Many of the Agreements state that it is the Franchisee's duty to "join and maintain membership in" a franchise association designated by Choice.  *See, e.g.* Jai Sai Baba LLC Agreement ¶ 6(n).  *See also* Agreements ¶ 6(n), ECF No. 8-4 to 8-10.  Other Franchise Agreements contain provisions, in addition to or instead of the duty provision above, stating that the Franchisees "acknowledge and agree that [Choice] will consult with the Franchise Association" on the use of certain fees and/or before making changes to certain policies.  *See, e.g.* Q Hotels LLC Agreement ¶ 19(g), ECF No. 8-4; Elite Hospitality LLC Agreement ¶ 19(g), ECF No. 8-8.

### III.     STANDARDS OF REVIEW

#### A.     Motion to Compel Arbitration

"The Federal Arbitration Act requires courts to enforce covered arbitration agreements according to their terms." *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1412 (2019) (citing 9 U.S.C. § 2).  In determining whether an arbitration agreement is valid under the FAA, federal policy "requires federal courts to look first to the relevant state law of contracts." *Spinetti v. Serv. Corp. Int'l*, 324 F.3d 212, 214 (3d Cir. 2003).  Under both state[1] and federal law, the court must read the arbitration agreement in light of the circumstances as they existed at the time the agreement was entered into.  *See DIRECTV, Inc. v. Imburgia*, 577 U.S. 47, 66 (2015) (stating that under federal law, the court must consider the agreement "in the light of the conditions and circumstances existing at the time they were entered into, with a view to effecting the objects and purposes of the [parties] thereby contracting" (internal quotations omitted)); *Doyle v. Fin. Am., LLC*, 918 A.2d 1266, 1274 (Md. 2007).

"The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).  "The burden is on the party opposing arbitration . . . to show that Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue." *Shearson/American Express v. McMahon*, 482 U.S. 220, 227 (1987).  "A party opposing a motion to compel arbitration bears the burden of proving the arbitration clause unenforceable." *Antkowiak v. Taxmasters*, 455 F. App'x 156, 159 (3d Cir. 2011) (citing *Green Tree Fin. Corp.-Ala. v.*

---

[1]          Here, the relevant state is Maryland.  *See* Jai Sai Baba LLC Agreement ¶ 21.

*Randolph*, 531 U.S. 79, 92 (2000)).  "All reasonable inferences from the evidence are to be granted to the party opposing arbitration."  *Antkowiak*, 455 F. App'x at 159.

In deciding a motion to compel arbitration, a district may either employ the motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) or the motion for summary judgment standard under Federal Rule of Civil Procedure 56.[2]  *See MacDonald v. Unisys Corp.*, 951 F. Supp. 2d 729, 732 (E.D. Pa. 2013).  When it is apparent from the face of a complaint and documents relied upon in the complaint that a party's claims are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under Rule 12(b)(6).  *See id*. (quoting *Guidotti v. Legal Helpers Debt Resolution L.L.C.*, 716 F.3d 764, 776 (3d Cir. 2013)).  "But if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue, then 'the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing on [the] question.'"  *Guidotti*, 716 F.3d at 776 (quoting *Somerset Consulting, LLC v. United Capital Lenders, LLC*, 832 F. Supp. 2d 474, 482 (E.D. Pa. 2011)).  If a court decides to hold discovery on the topic of arbitrability then, "after limited discovery, the court may entertain a renewed motion to compel arbitration, this time judging the motion under a summary judgement standard."  *See Guidotti*, 716 F.3d at 776.

**B.**     **The Effective Vindication Exception**

"[S]o long as the prospective litigant effectively may vindicate its statutory cause of action in the arbitral forum, the [FAA] will continue to serve both its remedial and deterrent

---

[2]     Defendants assert that this Motion should be decided under the Rule 12(b)(6) standard, but Plaintiffs assert that the Rule 56 standard applies.

function." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 637 (1985).

Where an arbitration agreement does not allow a litigant to vindicate his/her rights, it is

unenforceable. *See Green Tree Fin. Corp.-Alabama*, 531 U.S. at 90-92. The "effective

vindication" exception "serves to harmonize competing federal policies by allowing courts to

invalidate agreements that prevent the 'effective vindication' of a federal statutory right." *Am.*

*Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 235 (2013).

The Supreme Court has acknowledged that "the existence of large arbitration costs could

preclude a litigant . . . from effectively vindicating [his or] her federal statutory rights in the

arbitral forum." *Green Tree Financial Corp.—Alabama*, 531 U.S. at 90. *But see Italian Colors*

*Rest.*, 570 U.S. at 236 (holding that the exception would not apply simply because "it is not

worth the expense involved in proving a statutory remedy"). "A party seeking to invalidate an

arbitration agreement because arbitration would be prohibitively expensive bears the burden of

showing this likelihood." *Spinetti*, 324 F.3d at 217. "[T]o meet this burden, a plaintiff must (1)

come forward with some evidence to show the projected fees that would apply to their specific

arbitrations, and (2) show the party's inability to pay those costs." *Hall v. Treasure Bay V. I.*

*Corp.*, 371 F. App'x 311, 313 (3d Cir. 2010). This analysis is undertaken on a case-by-case

basis. *See Monfared v. St. Luke's Univ. Health Network*, No. 5:15-cv-04017, 2016 U.S. Dist.

LEXIS 152435, at *2-3 (E.D. Pa. Nov. 2, 2016); *Giordano v. Pep Boys--Manny, Moe & Jack,*

*Inc.*, No. 99-1281, 2001 U.S. Dist. LEXIS 5433, at *21 (E.D. Pa. Mar. 29, 2001).

Discovery limitations might also prevent a litigant from effectively vindicating his/her

rights. However, although the discovery procedures in arbitration forums "might not be as

extensive as in the federal courts, by agreeing to arbitrate, a party 'trades the procedures and

opportunity for review of the courtroom for the simplicity, informality, and expedition of

arbitration.'"  *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 31 (1991) (quoting

*Mitsubishi Motors Corp.*, 473 U.S. at 648 n.14).

### C.    Unconscionability

"An arbitration provision is void if it is unconscionable."  *Freedman v. Comcast Corp.*,

988 A.2d 68, 85 (Md. App. 2010).  Under Maryland law, unconscionability contains two

components, substantive and procedural aspects, the latter of which "relates to the individualized

circumstances surrounding each contracting party at the time of contracting."  *Doyle*, 918 A.2d at

1274.  "Substantive unconscionability involves those one-sided terms of a contract from which a

party seeks relief. . ., while procedural unconscionability deals with the process of making a

contract."  *Walther v. Sovereign Bank*, 872 A.2d 735, 744 (Md. 2005).  Procedural and

substantive unconscionability "must both be present in order for a court to exercise its discretion

to refuse to enforce a contract or clause under the doctrine of unconscionability."  *Doyle*, 918

A.2d at 1274.

### D.    Motion to Dismiss - Rule 12(b)(6)

Under Rule 12(b)(6), the court must "accept all factual allegations as true [and] construe

the complaint in the light most favorable to the plaintiff."  *Phillips v. Cnty. of Allegheny*, 515

F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d

Cir. 2002)) (internal quotation marks omitted).  Only if "the '[f]actual allegations . . . raise a right

to relief above the speculative level'" has the plaintiff stated a plausible claim.  *Id.* at 234

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "A claim has facial plausibility

when the plaintiff pleads factual content that allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009).  However, "the tenet that a court must accept as true all of the allegations contained in a

complaint is inapplicable to legal conclusions." *Id.* (explaining that determining "whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense"). "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). Additionally, "a document integral to or explicitly relied upon in the complaint may be considered." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (internal quotations omitted). The defendant bears the burden of demonstrating that a plaintiff has failed to state a claim upon which relief can be granted. *See Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

### E.     Motion for Summary Judgment - Rule 56

Under Rule 56, summary judgment can be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[3] The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once such a showing has been made, the non-moving party must go beyond the pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. Fed. R. Civ. P. 56(c);

---

[3]     A disputed fact is "material" if proof of its existence or nonexistence might affect the outcome of the case under applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 257.

*Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586

(1986) (stating that the non-moving party "must do more than simply show that there is some

metaphysical doubt as to the material facts").  The party opposing the motion must produce

evidence to show the existence of every element essential to its case, which it bears the burden of

proving at trial, because "a complete failure of proof concerning an essential element of the

nonmoving party's case necessarily renders all other facts immaterial."  *Celotex*, 477 U.S. at 323.

The court must consider the evidence in the light most favorable to the non-moving party.  *Scott*

*v. Harris*, 550 U.S. 372, 378 (2007).

## IV.   ANALYSIS

The Franchise Agreements are integral to the Complaint and may be considered when

applying the Rule 12(b)(6) standard of review.  Although Plaintiffs assert that it is necessary to

allow discovery, they have not responded "with additional facts sufficient to place the agreement

to arbitrate in issue."  *Guidotti*, 716 F.3d at 776.

The parties do not dispute that the Franchise Agreements each contain Arbitration

Provisions that apply to the claims in this action.  *See Monfared v. St. Luke's Univ. Health*

*Network*, 767 F. App'x 377, 379 (3d Cir. 2019) (requiring as a prerequisite to compelling

arbitration, the court must find that the dispute falls within the scope of a valid agreement).

Additionally, for the reasons explained below, each of Plaintiffs' arguments as to why such

provisions should not be enforced are rejected.

### A.   Effective Vindication

Plaintiffs argue that forcing them to arbitrate would prevent them from effectively

vindicating their statutory claims for two reasons: (1) the Arbitration Clauses would allow

Choice to withhold any prehearing discovery, and (2) the Arbitration Clauses require that the

Franchisees pay arbitral costs that they cannot afford.  *See* Resp. 7-18, ECF No. 9.  As to the first

reason, Plaintiffs assert that Choice holds the information Plaintiffs need to prove their case and

that prohibiting discovery effectively destroys their ability to substantiate or vindicate their

claims.  Resp. 8-12.  In support of the second reason, Plaintiffs outline the expected costs and

argue that in light of the current financial hit suffered as a result of the coronavirus pandemic,

individual arbitration would be prohibitively expensive.  *Id.* 13-18.  Defendants counter that

Plaintiffs do not lack the ability to pursue their claims simply because of the discovery

restrictions, the arbitration fees do not make access to the forum impractical, and the effective

vindication doctrine is rarely applied and is limited to cases involving unsophisticated persons

who had no choice but to accept the contract.  *See* Mot. 4-9; Reply 5-9.

**1.       The discovery limitations do not prevent effective vindication.**

The Supreme Court has determined that RICO and discrimination claims are arbitrable

despite discovery limitations.  *See Gilmer*, 500 U.S. at 1654-55.  The Court reasoned that while

discovery procedures in arbitration "might not be as extensive as in the federal courts, by

agreeing to arbitrate, a party trades the procedures and opportunity for review of the courtroom

for the simplicity, informality, and expedition of arbitration."  *Id.* (quoting *Mitsubishi Motors

Corp.*, 473 U.S. at 655).

The discovery provisions in the agreement to arbitrate at issue here do not prevent

Plaintiffs from vindicating their rights.  *See id.*  In fact, the provisions do not necessarily

withhold any discovery.  Rather, the provisions state that neither side may be required to produce

pre-hearing discovery "without our mutual consent."  *See* Jai Sai Baba LLC Agreement ¶ 21.

This exact provision has been reviewed previously in the federal courts and has been determined

not to foreclose pursuit of claims.  *See Singh v. Choice Hotels Int'l, Inc.*, No. 3:07-CV-0378-D,

2007 U.S. Dist. LEXIS 50614, at *18-19 (N.D. Tex. July 11, 2007).  In granting the motion to

compel arbitration, the *Singh* court determined that the "plain terms of the clause only preclude

production of documents, witness, or information at a time other than at a hearing and without

the parties' mutual consent."  *Id.*  The court reasoned that the clause does not render discovery to

be completely unavailable and, "according to its plain terms, it is bilateral in nature."  *See id.*

This Court agrees.  Accordingly, Plaintiffs have not shown that the discovery provisions

preclude them from effectively vindicating their rights.

2.      **Arbitration costs do not prevent Plaintiffs from vindicating rights.**

Plaintiffs assert that depending on the arbitration forum, they must likely expend between

$20,000 and $42,000 to arbitrate their claims.  *See* Resp. 16-17.  However, these fees are

speculative.  *See Green Tree Fin. Corp.-Alabama*, 531 U.S. at 92 (finding that the risk the

litigant would be responsible for prohibitive costs was too speculative to justify the invalidation

of an arbitration agreement).  Plaintiffs do not account for the fact that the administrative fees

may be reduced.  *See, e.g.* Exs. A-B.  Further, Plaintiffs' evidence on arbitral fees consists

merely of a declaration by Plaintiffs' counsel stating that "AAA and JAMS commercial

arbitrators generally command anywhere between $400 and $875 per hour."  Proper Dec., ECF

No. 9-2; *Green Tree Fin. Corp.-Alabama*, 531 U.S. at 90 n.6 (determining that the litigant's

citations to an article mentioning the average arbitral fee and to circuit opinions listing incurred

fees, along with the statement that arbitration fees are frequently waived, provided no basis on

which to ascertain the actual costs and fees to which the litigant would be subject in arbitration).

Plaintiffs' numbers are based on a two-week arbitration and two days of hearings due to the

"complexity" of the matter, but this estimated length has no further explanation or support.  *See*

Resp. 16.  Further, because the arbitrations must proceed individually, as discussed below, the

arbitration proceedings are unlikely to last as long for the smaller claims, which correlate to the Plaintiffs with less financial resources. *See Herzfeld v. 1416 Chancellor, Inc.*, No. 14-4966, 2015 U.S. Dist. LEXIS 95256, at *29-30 (E.D. Pa. July 22, 2015) (concluding that because the plaintiff cannot file a class action in arbitration and because the filing fees would only reach impracticable levels if it did, there was no need to decide if the high costs of filing and administrative fees would negate the plaintiff's effective vindication of a statutory right). Consequently, Plaintiffs have failed to present evidence to show that the projected fees would apply to their specific arbitrations. *See Green Tree Fin. Corp.-Alabama*, 531 U.S. at 91 ("The 'risk' that [Plaintiffs] will be saddled with prohibitive costs is too speculative to justify the invalidation of an arbitration agreement.").

Plaintiffs have also failed to show their inability to pay the projected costs. These costs must be considered in context and while they might seem high compared to court filing fees, they are not so substantial to deter the bringing of claims. The stream-lined discovery process and efficiencies in the arbitration system, especially when compared to the extended litigation a class-action lawsuit in federal court entails, will likely enable Plaintiffs to resolve their claims more quickly. The projected arbitration costs are far less than the damages requested, *see* Resp. 15-16 (stating that Plaintiffs "may in fact be entitled to damages in excess of a million dollars."[4]), and exceed many of the Affiliation Fees paid by Plaintiffs to enter into the Franchise Agreements, *see* Franchise Agreements § 4(a), ECF Nos. 8-3 to 8-11. Moreover, Plaintiffs are business companies, not individual persons. Plaintiffs' own declarations show that the

---

[4]    To be clear, this Court does not consider the possible damage award as a resource to pay arbitration costs. Rather, it is mentioned to support the finding that Plaintiffs will not be deterred from bringing claims by the projected arbitration costs.

companies each had average monthly revenues between $30,000[5] and $271,000 before the

beginning of the coronavirus pandemic.  *See* Resp. Ex. E, ECF Nos. 9-7 to 9-14.  All but two

Plaintiffs reported having monthly expenses lower than their monthly revenues.  *See id.*

Although Plaintiffs allege they have been financially burdened by the coronavirus pandemic and

provide specific numbers related thereto, the Court does not find that the costs are so substantial

as to deter the vindication of claims in the arbitration forum.  *See Bradford v. Rockwell*

*Semiconductor Sys.*, 238 F.3d 549, 558 n.6 (4th Cir. 2001) (considering, in a wrongful discharge

claim, the litigant's salary at the time of his discharge, as well as his sales incentives over the

three years prior to his discharge).  Plaintiffs flat-fee arrangement with counsel does not change

this conclusion.

Furthermore, the "*terms* of an arbitration agreement [must] actually prevent an individual

from effectively vindicating his or her statutory rights."  *Shankle v. B-G Maint. Mgmt. of Colo.,*

*Inc.*, 163 F.3d 1230, 1234 (10th Cir. 1999) (emphasis added).  The terms of the Arbitration

Provisions here, however, do not set the fees and costs.  *See Howell v. Rivergate Toyota, Inc.*,

144 F. App'x 475, 480 (6th Cir. 2005) ("[W]e must determine whether the contractual terms

identified by Mr. Howell prevent the vindication of statutory rights.").  While Plaintiffs suggest

Defendants' lack of assurances that Plaintiffs would not be required to pay prohibitive costs are

further evidence of the arbitration provisions' substantive unconscionability,[6] *see* Resp. 18, "an

arbitration agreement's silence with respect to such matters does not render the agreement

---

[5]      Only one Plaintiff reported an average monthly revenue less than $30,000, which was at
$20,800.

[6]      Because the "Third Circuit has not clearly addressed whether a cost-prohibitive defense
to arbitration should be addressed as a matter of the federal effective-vindication rule or state-law
unconscionability," *see Tharpe v. Securitas Sec. Servs. USA*, No. 20-13267, 2021 U.S. Dist.
LEXIS 34275, at *10 n.5 (D.N.J. Feb. 24, 2021) (citing cases), the Court has reviewed Plaintiffs'
arguments under both theories.

unenforceable, " *Green Tree Fin. Corp.-Alabama*, 531 U.S. at 82.  The reason no assurances can

be provided is because payment is dependent on the outcome of the arbitration.  Specifically, the

Franchise Agreement contains a provision allowing the "prevailing party" in an arbitration to

recover attorney's fees, "along with any court costs, arbitration costs, arbitrator fees, . . . ."  *See*

Jai Sai Baba LLC Agreement ¶ 16.  Such fee-shifting provisions do not prevent Plaintiffs from

effectively vindicating their claims.  *See Lillard v. Tech USA, Inc.*, No. ADC-20-308, 2020 U.S.

Dist. LEXIS 151570, at *11-12 (D. Md. Aug. 21, 2020) (rejecting that plaintiff's argument that

the fee-shifting provisions in the arbitration clause prevents effective vindication of her claims

because she is unable to bear the costs of arbitration).

For all these reasons, "[t]he 'risk' that [Plaintiffs] will be saddled with prohibitive costs is

too speculative to justify the invalidation of an arbitration agreement." *Green Tree Fin. Corp.-*

*Alabama*, 531 U.S. at 91.

### B.     **Unconscionable**

Plaintiffs assert that the Arbitration Clauses are procedurally and substantively

unconscionable because, respectively, they were presented to Plaintiffs on a take-it-or-leave it

basis to parties of weaker bargaining power and were contracts of adhesion, and because they

deny the right to all pre-hearing discovery without mutual consent, impose prohibitive arbitration

costs, dictate the applicable state law that will prove detrimental to Plaintiffs' claims, and are

non-mutual.  Resp. 18-26.  Defendants' reply that each Plaintiff is a sophisticated business entity

that had the opportunity to negotiate the terms before signing the agreement or to simply walk

away and, also, that the choice of state law provisions do not exculpate Choice from liability.

Reply 1-4.

### 1.      The Arbitration Provision is not procedurally unconscionable.

"A contract of adhesion has been defined as one 'that is drafted unilaterally by the dominant party and then presented on a 'take-it-or-leave-it' basis to the weaker party who has no real opportunity to bargain about its terms.'" *Meyer v. State Farm Fire & Cas. Co.*, 582 A.2d 275, 278 (Md. App. 1990) (quoting Restatement (Second) of Conflict of Laws § 187, Comment b).  "The fact that a contract is one of adhesion does not mean that either it or any of its terms are invalid or unenforceable."  *Meyer*, 582 A.2d at 278 (stating that in a contract of adhesion, a "court will, to be sure, look at the contract and its terms with some special care").  "A contract of adhesion is not automatically deemed per se unconscionable."  *Walther*, 872 A.2d at 744.

Regardless of whether many of the Plaintiffs chose not to be represented by counsel when signing the agreements, Plaintiffs were each business companies operating hotels.  In *Shaffer*, the Third Circuit Court of Appeals stated it was "unaware of any relevant cases in which the court has found an adhesion contract when dealing with the purchase of a franchise rather than a consumer purchase."  *Shaffer v. Graybill*, 68 F. App'x 374, 377 (3d Cir. 2003) (finding no support in the record of unequal bargaining power or unconscionability).  Plaintiffs' reliance on *Takiedine*, which involved an individual person negotiating with a large corporation, is therefore misplaced.  *See Takiedine v. 7-Eleven, Inc.*, No. 17-4518, 2019 U.S. Dist. LEXIS 29201, at *1 (E.D. Pa. Feb. 22, 2019).  Plaintiffs' suggestion that they are distinguishable from the plaintiffs in *Choice Hotels Int'l, Inc. v. Chewl's Hospitality, Inc.* also lacks support.  *See* 91 Fed. Appx. 810, 815 (4th Cir. 2003) (finding, *inter alia*, that Chewl was not an unsophisticated consumer, nor had it demonstrated that it had no viable alternatives, or that it faced the possibility of being excluded from the hotel franchise business if it had refused such an arbitration contract).  Moreover, in response to Defendants' evidence that there were variations in the Franchise

Agreements, Plaintiffs merely assert that the changes were minor.  They argue "that Choice does not contend that any of the variations in the precise terms of the Arbitration Clauses were the result of negotiations between itself and the Franchisees," but this argument ignores the fact that Plaintiffs (not Choice) bear the burden of proving that the Arbitration Provision is unenforceable. Plaintiffs assert that more than ninety Franchise Agreements were each offered on a take-it-or-leave-it basis, but offer no factual allegations to support such a claim.  Rather, as Defendants state, "each Plaintiff had the opportunity to negotiate the terms of its Agreement and could have walked away before signing. None of the Plaintiffs were forced to brand their hotel properties with a Choice mark."  *See* Reply 1.  Finally, "a sophisticated party to a commercial contract who is asserting adhesion must demonstrate that he had no viable alternatives, or that he faced the possibility of being excluded from the hotel franchise business if he had refused."  *Singh*, 2007 U.S. Dist. LEXIS 50614, at *31 (concluding that "[a]lthough Singh avers that Choice Hotels prepared the Franchise Agreement and allowed no changes to it, he has not shown that he had no viable alternatives, or that he faced the possibility of being excluded from the hotel franchise business if he had refused [and] has therefore failed to show that the franchise agreement is a contract of adhesion").  Plaintiffs have made no attempt to make such a demonstration. Accordingly, they have failed to show the Arbitration Provision is procedurally unconscionable.

       2.     **The Arbitration Provision is not substantively unconscionable.**

"Substantively unconscionable terms are unreasonably favorable to the more powerful party, impair the integrity of the bargaining process or otherwise contravene the public interest or public policy, attempt to alter in an impermissible manner fundamental duties otherwise imposed by the law, or are otherwise unreasonably and unexpectedly harsh."  *Freedman*, 988 A.2d at 85-86.  Plaintiffs have not made this showing.

For the reasons discussed in section A, neither arbitration costs nor the discovery limitations render the Arbitration Provision substantively unconscionable.  *See also Sayre v. Westlake Servs., LLC*, No. -JFM-15-687, 2015 U.S. Dist. LEXIS 133856, at *3 (D. Md. Sep. 30, 2015) (rejecting the argument that requiring the non-prevailing party in arbitration to pay the costs and fees incurred by the prevailing party is unconscionable);[7] *Singh*, 2007 U.S. Dist. LEXIS 50614, at *19, 24-25 (concluding that in a nearly identical franchise agreement, the failure to "disclose the potential costs of arbitration does not of itself establish that the arbitration agreement is unconscionable," nor are the discovery provisions that only preclude certain discovery "without the parties' mutual consent" unconscionably one-sided); *Freedman*, 988 A.2d at 89 (rejecting the litigant's argument that discovery in arbitration will necessarily be so limited as to render the Arbitration Provision unconscionable).[8]

Next, Plaintiffs argue that the Arbitration Provisions "demand application of Maryland law, yet carve out a specific Maryland statute that Choice knows could prove detrimental to it." Resp. 23.  This is incorrect.  The Provisions merely state that the substantive laws of Maryland will apply and that *"nothing herein shall be construed to establish independently* your right to pursue claims under Maryland's Franchise Registration and Disclosure Law."  *See* Jai Sai Baba LLC Agreement ¶ 21 (emphasis added).  "[T]he objective meaning of the proviso is that nothing in the arbitration clause or the Franchise Agreement as a whole is to be construed to establish a

---

[7]     *See Walther*, 872 A.2d at 752 (holding that in determining whether prohibitive costs and a fee provision may be substantively unconscionable, the court should consider "whether the arbitration agreement provides for fee- shifting, including the ability to shift forum fees based upon the inability to pay"); *Falls v. 1CI, Inc.*, 57 A.3d 521, 537-38 (Md. App. 2012) (directing the court to consider "whether that cost differential is so substantial as to deter the bringing of claims"  and "ultimately will be paid by the claimant").

[8]     "Parties commonly agree to arbitrate under limited discovery."  *See Freedman*, 988 A.2d at 89 (stating that the court will not speculate that a litigant will be denied some fundamental-- and unspecified-- level of discovery).

right to pursue claims under Maryland's Franchise Registration and Disclosure Law that does not otherwise exist. The clause therefore does not expressly preclude [Plaintiffs] from asserting such a claim in arbitration." *Singh*, 2007 U.S. Dist. LEXIS 50614, at \*20. Moreover, "the parties may choose to be bound by a particular state law . . . even if the FAA would otherwise displace that state law." *DIRECTV, Inc.*, 577 U.S. at 63. *See also* Restat 2d of Conflict of Laws, § 187(2) (2nd 1988). Thus, the choice of law provision is not unconscionable.

Finally, nothing in the Arbitration Provisions exculpate Defendants from liability so as to show a lack of mutuality. *See Singh*, 2007 U.S. Dist. LEXIS 50614, at \*15-17. "Mutuality, [moreover], does not require an exactly even exchange of identical rights and obligations between the two contracting parties before a contract will be deemed valid." *Walther*, 872 A.2d at 748. With this understanding, the class action waiver is also not unconscionable. *See Muriithi v. Shuttle Express, Inc.*, 712 F.3d 173, 180-81 (4th Cir. 2013); *Walther*, 872 A.2d at 750 ("Numerous courts, both federal and state, have rigorously enforced no-class-action provisions in arbitration agreements and found them to be valid provisions of such agreements and not unconscionable.").

This Court finds that the parties entered into a valid agreement to arbitrate. *See Century Indem. Co. v. Certain Underwriters at Lloyd's*, 584 F.3d 513, 523 (3d Cir. 2009) (holding that "[f]or a court to compel arbitration, it initially must find that there is a valid agreement to arbitrate").

### C.     Enforceability by CHOC

Plaintiffs contend that the Arbitration Provisions are not enforceable by CHOC because, regardless of its relationship with Choice, CHOC is a non-signatory and because CHOC had duties independent of the Franchise Agreements. Resp. 26-28. Defendants respond that

although CHOC is a non-signatory to the Agreements, it can nevertheless enforce the Arbitration Provisions because of the close relationship between Choice and CHOC, the fact that Plaintiffs' claims against CHOC stem from the relationship between Choice and Plaintiffs formed in the Agreements, and that Plaintiffs seek to hold CHOC liable for the same conduct.  *See* Mot. 26-27.

Plaintiffs essentially want to have their cake and eat it too.  Plaintiffs seek to hold CHOC liable based on its alleged conspiracy with Choice and on CHOC's duties associated with and arising from the Franchise Agreements.  In the Amended Complaint, Plaintiffs allege, *inter alia*, that "Choice and CHOC conspired to fraudulently represent to Franchisees that CHOC was a good faith representative of their interests in order to induce them into entering the Agreements and acquire from them a monthly association fee."  *See* Am. Compl. ¶ 316.  In Count IX, brought solely against CHOC, Plaintiffs allege that "CHOC assumed a fiduciary duty to represent the interests of its member Franchisees in negotiations with Choice, because . . . CHOC represents in its mission statement to the Franchisees that its purposes are, inter alia, to . . . assure that [Choice's] plans and policies enhance the best interest of the franchisees of the system."  *Id.* at ¶ 427 (citing to Choice Hotels Owners Council, Missions and Objectives, available at https://www.choiceowners.com).  In Count XI, brought against both Defendants, Plaintiffs allege "CHOC owes a duty to account for monies, specifically its use of the monthly association fee provided by Franchisees."  *Id.* at ¶ 446.  Plaintiffs complain that they "are required to pay monthly membership dues to CHOC, and are members of CHOC."  *Id.* at ¶ 426.  The membership obligations and fees arose directly from the Franchise Agreements.  *See, e.g.* Jai Sai Baba LLC Agreement ¶ 6(n) (requiring the Franchisee to "join and maintain membership in" a franchise association designated by Choice).  Accordingly, because Plaintiffs' allegations against CHOC arise out of and directly relate to the Franchise Agreements, CHOC, a non-signatory to

the contract, can enforce the Arbitration Provisions against Plaintiffs.  *See Schuele v. Case Handyman & Remodeling Servs., LLC*, 989 A.2d 210, 214 (Md. 2010).  *See also Torres v. CleanNet U.S.A., Inc.*, 90 F. Supp. 3d 369, 378-79 (E.D. Pa. 2015) (concluding that the claims in the complaint "stem from the franchisor/franchisee relationship established by the Franchise Agreement and thus are intimately founded in and intertwined with the Franchise Agreement" such that "equitable estoppel empowers . . . Defendants to enforce the arbitration agreement").

### D.  Individual Arbitration

Defendants assert that collective arbitration is not appropriate, and that arbitration should proceed on an individual basis.  *See* Mot. 27.  They contend that approximately two-thirds of the Franchise Agreements contain an enforceable class action waiver, *see, e.g.* Jai Sai Baba LLC Agreement ¶ 22, and that the other Agreements' silence regarding class action arbitration is of no consequence because "silence regarding class arbitration generally indicates a prohibition against class arbitration[.]"  Mot. 29 (quoting *Quillon v. Tenet HealthSystem Phila., Inc.*, 673 F.3d 221, 232 (3d Cir. 2012)).  Plaintiffs, however, assert that if arbitration is compelled, they should not be forced to proceed on an individual basis.  Resp. 28-29.  This argument is based on two reasons: (1) the lack of a class action waiver in many of the Franchise Agreements, and (2) individual arbitration will prevent Plaintiffs from effectively vindicating their claims.  *Id.*

As previously explained, Plaintiffs have not met their burden of showing that individual arbitrations would prevent them from effectively vindicating their rights or that the Arbitration Provision or class action waiver is unconscionable.  Additionally, Defendants are correct that "a court may not compel arbitration on a classwide basis when an agreement is 'silent' on the availability of such arbitration."  *Lamps Plus, Inc.*, 139 S. Ct. at 1412.  Even an ambiguous agreement cannot provide the necessary "contractual basis" to compel class arbitration.  *See id.*

at 1415 (holding that because class arbitration undermines the most important benefits of arbitration, the FAA "requires more than ambiguity to ensure that the parties actually agreed to arbitrate on a classwide basis").  Arbitration must therefore proceed on an individual basis.

## V.     CONCLUSION

Plaintiffs entered into valid, enforceable arbitration agreements with Choice that they admit apply to the claims in the instant action.  Because these claims, as they relate to CHOC, also arise from the Franchise Agreements, both Defendants may enforce the agreements to arbitrate.  Defendants' Motion to Compel Arbitration and Stay Proceedings is granted.  Plaintiffs must proceed to arbitration on an individual basis and the above-captioned action is stayed pending the resolution of these proceedings.[9]

A separate order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge

---

[9]     *See* 9 U.S.C. § 3 ("If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement. . . .").