# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Highmark Lodging, LLC, Darshan Patel, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>Choice Hotels International, Inc., *et al.*,<br><br>Defendants. | Case No. 5:20-cv-2823-JFL<br><br>**DEFENDANT'S MEMORANDUM OF LEGAL CONTENTIONS AND AUTHORITIES IN SUPPORT OF MOTION TO VACATE OR MODIFY ARBITRATION AWARD** |

Defendant Choice Hotels International, Inc. ("Choice") submits this Memorandum in Support of its Motion to Vacate or Modify, pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 10 -11 and related case law, the Final Award entered on July 27, 2023, which incorporates the related Opinion and Partial Final Award entered on May 17, 2023, in the American Arbitration Association ("AAA") case entitled *Highmark Lodging LLC, et al. v. Choice Hotels International, Inc., et al.*, No. 01-21-0004-5554. Portions of the Awards should be vacated or modified because the Arbitrator showed manifest disregard of the most elementary principles of contract law in holding that Choice's Franchise Disclosure Document is integrated with and incorporated into the parties' Franchise Agreement, and that the disclosures contained therein constitute contractual promises that Choice breached. The plain and obvious reading of the Franchise Agreement establishes that the Arbitrator erred and that, under existing and longstanding precedent, his ruling cannot stand.

## STATEMENT OF FACTS

*Procedural History*

Plaintiffs Darshan Patel and Highmark Lodging, LLC (collectively, "Claimants") owned and operated a hotel under the Quality Inn & Suites brand in Dickinson, North Dakota from 2018 to 2021, pursuant to a Franchise Agreement and related Assignment and Assumption Agreement entered into with Choice Hotels International, Inc., dated June 24, 2018 (the "Franchise Agreement").

On June 12, 2020, a group of franchisees, including Claimants, filed a lawsuit in this Court against Choice alleging a variety of claims, including breach of contract, arising out of statements contained in the Franchise Agreements between Choice and the franchisees. The Court applied the arbitration provision in the Franchise Agreements and ordered the franchisees to engage in separate, individual arbitrations, resulting in the above-cited arbitration brought by Claimants in the AAA before arbitrator Steven Petrikis ("Arbitrator").

As part of the arbitration, the parties submitted thorough and detailed prehearing briefs, opening and closing statements, post-hearing memoranda, post-hearing reply memoranda, and supplemental memoranda. Hearings were held remotely on February 13, 14, 15, 16, 17, 21, 22, and 23, 2023. The Arbitrator issued an Opinion and Partial Final Award on May 17, 2023 ("Partial Award," Ex. 3 to ECF 47), and a Final Award dated July 27, 2023 ("Final Award," Ex. 5 to ECF 47).

*Claims at Issue*

Claimants' claims were not succinctly and clearly stated in their Demand or Amended Demand and continued to evolve over the course of the case. Ultimately, Claimants asserted claims for breach of contract, fraud, and a violation of the Racketeer Influenced and Corrupt

Organizations Act related to Choice's Qualified Vendor program, claims for breach of contract and conversion related to Choice's use of key money loans, a claim for breach of contract arising out of Choice's call forwarding program, and a claim for breach of the implied covenant of good faith and fair dealing related to Choice's loyalty rewards program. At issue here are the breach of contract claims related to Choice's Qualified Vendor program and key money loans.

For their Qualified Vendor breach of contract claims, Claimants took issue with statements in the Franchise Disclosure Document ("FDD") provided to them before they entered into the Franchise Agreement, and certain language in the Franchise Agreement. Specifically, Claimants argued that Choice failed to comply with a sentence that appears in both the FDD and the Franchise Agreement which states that Choice "may limit the number of Qualified Vendors to obtain volume discounts and to promote consistent quality and adequate supplies for the brand." (Partial Award at 3, 4.) The Arbitrator also considered a sentence in the FDD which he interpreted as "a promise to negotiate favorable pricing."[1] (*Id.* at 10.) Similarly, for their key money breach of contract claims, Claimants argued that Choice breached a Franchise Agreement provision and also violated a statement in the FDD that "we [Choice] do not use any of the System Fee to solicit new Franchisees" because, Claimants argued, key money loans were funded with System Fee money and were used to solicit new franchisees. (*See id.* at 13-15.)

Because the FDD is not an agreement between the parties, claims arising from statements in the Franchise Disclosure Document typically take the form of fraud claims. However, in this case, "[i]t is admitted that Mr. Patel did not read the Franchise Agreement, the FDD and certain other documents which allegedly set forth fraudulent statements." (*Id.* at 16-17.) Therefore, "[r]eliance could not be proven" and the Arbitrator dismissed Claimants' fraud claims. (*Id.* at 17.)

---

[1] As discussed, *infra*, Choice disagrees with this interpretation.

Claimants further attempted to convert the fraud claims to breach of contract claims by arguing that the entire Franchise Disclosure Document is incorporated into the Franchise Agreement. (*See id.* at 9.)

***Selected Arbitrator Opinions and Related Provisions of the Franchise Agreement***

The Franchise Agreement included an integration clause that was addressed in the Arbitration proceedings, and which states in full:

> INTEGRATION. THIS AGREEMENT, **ALL OF ITS ATTACHMENTS, AND ANY AGREEMENT SPECIFICALLY MADE A PART OF THIS AGREEMENT PURSUANT TO THE TERMS HEREOF**, CONTAIN THE COMPLETE UNDERSTANDING OF THE PARTIES AND REPLACE ANY PREVIOUS WRITTEN OR ORAL AGREEMENT ON THE SAME SUBJECT MATTER. NO REPRESENTATION, INDUCEMENT, PROMISE OR AGREEMENT, ORAL OR OTHERWISE, NOT CONTAINED IN THIS AGREEMENT OR IN OUR FRANCHISE DISCLOSURE DOCUMENT, WILL BE OF ANY FORCE OR EFFECT.

(*Id.* at 10 (emphasis added.)

Based on this provision, the Arbitrator held that he "accept[ed] Claimants' position that the terms of the FDD are in fact *incorporated* into the Franchise Agreement." (*Id.* at 9.)  The Arbitrator further explained that the FDD is incorporated into the Franchise Agreement because:

> The unadorned language of the clause puts a promise made in the FDD on the precise same footing as those made in the Franchise Agreement. The FDD is clearly, precisely and conspicuously identified.

(*Id.* at 10.) The Arbitrator cited as the basis for his conclusion that:

> In addition, the cases set forth in brief at pages 27-29, though not all directly on point, are persuasive, particularly the decision in *Martrane v. Quizno's*, 2009 U.S. Dist. Lexis 52025 (W.D. Pa. June 15, 2009).

(*Id.*) Based on this threshold finding – that the FDD is incorporated into the FDD and contains contractual promises – the Arbitrator determined that Choice was liable for breach of contract

arising from the statements in the FDD related to negotiating and obtaining discounted pricing from Qualified Vendors and the use of key money funds to solicit new franchisees. The problem for the Arbitrator, as discussed more fully below, is that the FDD is not a Franchise Agreement, is not an addendum to the Franchise Agreement, and is not specifically made a part of the Franchise Agreement "pursuant to the terms" of the Agreement. Rather, the FDD is merely a pre-contract disclosure document the terms of which cannot be disclaimed in connection with any assertion of fraud.  (*See id.* at 10-11, 13-14.)

*Franchise Disclosure Documents*

Choice, and all other franchisors subject to the Federal Trade Commissions "Franchise Rule," 16 C.F.R. § 436.1, are required to publish and offer to prospective franchisees a disclosure document known as the Franchise Disclosure Document, or FDD. The disclosure requirements are detailed at length in 16 C.F.R. § 436.1 *et seq.*, and related agency guidance and applicable law, which establish, among other things, that an FDD is a *pre-sale* disclosure statement and not a binding contract between a franchisor and franchisee. An FDD is given to a prospective franchisee at least 14 days before a franchise agreement can be executed, 16 C.F.R. § 436.2, and not every prospective franchisee who receives a Franchise Disclosure Document will ultimately purchase a franchise.

## STATEMENT OF THE QUESTIONS INVOLVED

Did the Arbitrator demonstrate manifest disregard of the law, under Section 10 of the Federal Arbitration Act, 9 U.S.C. § 10 and related case law, in holding in the Award that the Franchise Disclosure Document is incorporated into the parties' Franchise Agreement, and thereby holding that Choice breached contractual obligations to Plaintiff that arose exclusively from statements contained in the FDD?

## SUMMARY OF ARGUMENT

When it is evident from the record that the arbitrator knew the applicable law, and yet chose to ignore it, a court will find manifest disregard warranting vacation of an arbitration award under 9 U.S.C. § 10. *See, e.g.*, *Aetna Cas. & Surety Co. v. Dravo Corp.,* No. 97–149, 1997 WL 560134, at *1 (E.D. Pa. Aug. 1, 1997). With regard to claims arising from a contract, courts must "begin with the obvious: an arbitrator 'may not ignore the plain language of the contract.'" *Monongahela Valley Hosp. Inc. v. United Steel Paper & Forestry Rubber Mfg. Allied Indus. & Serv. Workers Int'l Union AFL-CIO CLC*, 946 F.3d 195, 199 (3d Cir. 2019).

The plain language of the Franchise Agreement's integration clause at issue in this case unambiguously did not incorporate the FDD into the Franchise Agreement. These essential facts and legal conclusions, which are well-supported by bedrock principles of contract construction recognized in this District and the Third Circuit, were presented to the Arbitrator, who chose to ignore them. Accordingly, Choice has demonstrated that the Arbitrator exhibited manifest disregard for the law, entitling Choice to an order vacating or modifying the Award as it relates to findings that the FDD is incorporated into the Franchise Agreement and Choice is liable for breach of contract arising exclusively out of statements contained in the FDD.

## LEGAL STANDARD

Under the Federal Arbitration Act, 9 U.S.C. § 10, and related case law, an arbitration award may be set aside or modified if it reflects a "manifest disregard of the agreement, totally unsupported by principles of contract construction . . . ." *Exxon Shipping Co. v. Exxon Seamen's Union*, 993 F.2d 357, 360 (3d Cir. 1993); *see also Indep. Lab'y Employees' Union, Inc. v. ExxonMobil Rsch. & Eng'g Co.*, 11 F.4th 210, 215 (3d Cir. 2021) (same). When evaluating a motion to vacate for manifest disregard of a contract, courts must "begin with the obvious: an

arbitrator 'may not ignore the plain language of the contract.'" *Monongahela Valley Hosp. Inc. v. United Steel Paper & Forestry Rubber Mfg. Allied Indus. & Serv. Workers Int'l Union AFL-CIO CLC*, 946 F.3d 195, 199 (3d Cir. 2019). The Supreme Court has, likewise, made clear that an "arbitrator may not ignore the plain language of the contract." *Pennsylvania Power Co. v. Loc. Union No. 272, Int'l Bhd. of Elec. Workers, AFL-CIO*, 276 F.3d 174, 178 (3d Cir. 2001) (quoting *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 38 (1987)).

Courts further explain that the manifest disregard "principle means that the correct legal standard must have been so obvious that the typical arbitrator would readily and instantly have perceived it, the arbitrator must have been subjectively aware of that standard, and he must have proceeded to ignore that standard in fashioning the award." *Jeffrey M. Brown Assocs., Inc. v. Allstar Drywall & Acoustics, Inc.*, 195 F. Supp. 2d 681, 685 (E.D. Pa. 2002). Procedurally, courts find manifest disregard when it is evident from the record that the arbitrator knew the applicable law, and yet chose to ignore it, thereby exceeding his authority under Section 10 of the FAA. *See, e.g.*, *Aetna Cas. & Surety Co. v. Dravo Corp.,* No. 97–149, 1997 WL 560134, at *1 (E.D. Pa. Aug. 1, 1997).[2]

## ARGUMENT

The Arbitrator's ruling that the Franchise Disclosure Document is not merely a disclosure document, but was somehow *incorporated* into the parties' Franchise Agreement such that Choice could breach statements contained in the FDD, reflects a manifest disregard of the law and requires that this Court vacate and/or modify the Award. Because the Arbitrator ignored the plain language

---

[2] Although the Third Circuit has not decided whether manifest disregard remains an independent basis for vacating an award in light of *Hall Street Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 584 (2008), it has recently stated that it "assumes without deciding that an arbitrator's manifest disregard of the law remains a valid basis for vacating arbitration awards." *Bayside Constr. LLC v. Smith*, No. 21-2716, 2022 WL 2593303, at *2 (3d Cir. July 8, 2022).

of the contract, and there is ample evidence in the record that the Arbitrator knew or should have known of the applicable law and chose to ignore it, the Award must be vacated. *Matteson v. Ryder Sys. Inc.*, 99 F.3d 108, 114 (3d Cir. 1996) (vacating an award and noting that the "courts are neither entitled nor encouraged simply to 'rubber stamp' the interpretations and decisions of arbitrators").

### 1. **The Arbitrator's Award Manifestly Disregards the Law**.

### a. **The Law on Interpreting the Integration Clause Is Clear and Was Presented to the Arbitrator**

The Arbitrator knew or had reason to know the applicable law for at least two reasons. First, it is evident in the record that Choice clearly and extensively presented to the Arbitrator the applicable law on the issue of whether an FDD constitutes an agreement itself or was incorporated into the Franchise Agreement on the basis of the parties' integration clause or otherwise. *Aetna Cas. & Surety Co.*, 1997 WL 560134, at *1. Second, regardless of the record, elementary canons of contract construction confirm that the FDD is *not* incorporated into the Franchise Agreement. That is, under the principles of contract interpretation, the "correct legal standard [was] . . . so obvious that the typical arbitrator would readily and instantly have perceived it." *Nat'l Fire Ins. Co. v. Sippel Dev. Co.*, No. 06CV0390, 2006 WL 1670201, at *2 (W.D. Pa. June 15, 2006).

That the Arbitrator disregarded these rules entitles Choice to relief by this motion.

### i. **Choice presented the law to the Arbitrator.**

It is well established that a Franchise Disclosure Document is *not* a contract between any parties, including the parties to this case, the franchisor, Choice Hotels International, Inc. and the franchisee, Highmark Lodging LLC. An FDD is *instead* a "disclosure document" required by the Federal Trade Commission under federal law, through 16 C.F.R. § 436.1 *et seq.* (commonly

referred to as the "FTC Franchise Rule"), to be published and provided to prospective franchisees.[3] The FTC Franchise Rule *requires* franchisors, in 16 C.F.R. § 436, to illuminate this distinction to prospective franchisees on the Cover Page of the disclosure document by, among other things, including the statement that:

> The terms of your contract will govern your franchise relationship. Don't rely on the disclosure document alone to understand your contract. Read all of your contract carefully. Show your contract and this disclosure document to an advisor, like a lawyer or an accountant.

16 C.F.R. § 436.3. This reflects an unmistakable determination that franchisees must be affirmatively placed on notice that although the FDD discloses certain information in summary fashion,[4] "terms of [the] contract will govern your franchise relationship." *Id.* This determination is prescribed in the FTC's Franchise Rule Compliance Guide ("Compliance Guide") ("Certain prescribed statements must also be included in the cover page.").[5] Prospective franchisees often negotiate certain aspects of the Franchise Agreement with Choice, meaning that certain terms often differ from one Franchise Agreement to another and from the standard terms listed in the FDD. However, Choice provides the same disclosures to each prospective franchisee who receives an FDD in a given year. The obvious and separate purposes that these two documents serve is evident in other respects, too; for example, the Franchise Rule clarifies that the FDD must be provided "at least 14 calendar-days before the prospective franchisee signs a ***binding agreement***." 16 C.F.R. § 436.2 (emphasis added). The FDD *informs and precedes* execution of the *binding* Franchise

---

[3] The North Dakota Franchise Investment Law, N.D. Cent. Code Ann. § 51-19-01 *et seq.* also requires that such a disclosure document (or "prospectus") be given to prospective franchisees.

[4] *See also* 16 C.F.R. § 436.3 ("This disclosure document **_summarizes_** certain provisions of your franchise agreement and other information in plain English.") (emphasis added).

[5] A copy of the Compliance Guide is available at:
https://www.ftc.gov/system/files/documents/plain-language/bus70-franchise-rule-compliance-guide.pdf and is available through a general Google search.

Agreement, but upon execution, it is exclusively the "terms of [the] contract [that] will govern your franchise relationship." 16 C.F.R. § 436.3.

The FTC elaborated on this demarcation in its official Statement of Basis and Purpose published in connection with adoption of the updated Franchise Rule, explaining that it "is primarily a pre-sale disclosure rule," and that the rule:

> did not purport to regulate the substantive terms of the franchise or business opportunity relationship. Rather, it required franchisors and business opportunity sellers to disclose material information to prospective purchasers on the theory that informed investors can determine for themselves whether a particular deal is in their best interest.

*See* Disclosure Requirements and Prohibitions Concerning Franchising, 72 FR 15444-01. The terms of the FDD do not survive execution of the agreement, as a matter of federal policy.

In view of these federal policy considerations, Choice illustrated for the Arbitrator's understanding the clear distinction between the Franchise Agreement, which is a valid and enforceable contract, and the FDD, which is not, in multiple filings in the Arbitration. In the Respondents Post-Hearing Memorandum dated March 31, 2023, Choice included a separate section entitled "The FDD is Not Incorporated Into the Franchise Agreement." (*See* Exhibit 1 to Declaration of Eric Yaffe, "Post-Hearing Mem." at 48-50.) In that section, Choice explained to the Arbitrator that Claimant's argument that the "integration clause of the Franchise Agreement incorporates the entire FDD . . . is unsupported by law." (*Id.* at 49.) It cited the applicable standard for the incorporation of a separate document from the North Dakota Supreme Court case *RTS Shearing, LLC v. BNI Coal, Ltd.,* 965 N.W.2d 40, 44 (N.D. 2021), which established that:

> to incorporate a separate document into a contract, the contract must make a "clear reference to the document and describe it in such term that its identity may be ascertained beyond doubt" and "it must be clear that the parties to the agreement had knowledge of and assented to the incorporated terms."

Quoting *RTS Shearing, LLC*, Choice further explained—consistent with federal guidance—that a "mere reference to another document is not sufficient to incorporate that other document into a contract." *Id.* Instead, the document is incorporated by reference when: (1) the "underlying contract makes clear reference to a separate document," (2) the "identity of the separate document may be ascertained," and (3) "incorporation of the document will not result in surprise or hardship." *Id.* Choice proceeded to explain that "the integration clause states that the complete understanding of the parties includes **the agreement, its attachments, and 'any agreement specifically made a part of this agreement**.'" (Post-Hearing Mem. at 50 (emphasis added).) Because the FDD is not an attachment to the Franchise Agreement and is not an *agreement*, it could not be considered a part of the Franchise Agreement under the plain language of the Franchise Agreement and *RTS Shearing, LLC v. BNI Coal, Ltd.,* 965 N.W.2d 40, 44 (N.D. 2021).

In the same brief, Choice also explained, with citation to federal law, why the reference to the FDD in the integration clause did not convert the FDD into an agreement or otherwise incorporate it into the agreement. Specifically, Choice explained that under 16 CFR § 436.9(h) of the FTC's Franchise Rule, a franchisor may not disclaim representations in the FDD, stating that:

> the integration clause mentions the FDD to make clear that Claimants were not disclaiming representations made in it and to clarify that representations that are not in the FDD will be of no force and effect . . . that does not mean that representations contained in the FDD become a part of the contract.

(*See* Post-Hearing Mem. at 50.)

Choice further elaborated on the applicable legal standard to determine whether the FDD could be regarded as part of the Franchise Agreement in Respondents' Post-hearing Reply Memorandum. (*See* Exhibit 3 to Declaration of Eric Yaffe, "Reply Mem." at 4-6.) In that brief, Choice addressed Claimants' apparent position that the "entire 400-plus page FDD is incorporated into the Franchise Agreement and made a contractual obligation," including by distinguishing each

case that the Claimants cited—*none* of which demonstrated that an FDD may be incorporated into a Franchise Agreement absent express reference, nor did they demonstrate that a statement made in an FDD could support a breach of contract claim. (*Id.* 4-5.)[6] The Arbitrator noted that Claimants' cited cases are not "all directly on point" and ultimately expressly relied on only one of them, *Martrano v. Quizno's Franchise Co., L.L.C.,* 2009 WL 1704469, *17 (W.D. Pa. June 15, 2009). (*See* Partial Award at 10.) But *Martrano* concerned a motion to dismiss, where all pleadings are accepted as true and factual disputes are not examined except to determine if the pleading survives dismissal. Amid that inapposite procedural posture, *Martrano* actually did *not* find that the Uniform Franchise Offering Circular ("UFOC")[7] *was* incorporated into the parties' Franchise Agreement, contrary to Claimants' arguments and the Arbitrator's Award. Instead, the *Martrano* court only cautioned that "it is far from clear that statements in the UFOC were excluded by such apparently inclusive language." *Martrano*, 2009 WL 1704469 at *17. This is a distinction *with* a difference because here it is clear that the FDD was excluded from the critical first provision of the integration clause which set forth which attachments and agreements are integrated. Moreover, *Martrano* does not actually quote the entire integration clause at issue in that case, making a

---

[6] Specifically, Choice explained that Claimants erroneously rely on *Altruist, LLC v. Medex Patient Transp., LLC,* 308 F. Supp. 3d 943 (M.D. Tenn. Apr. 9, 2018) and *Abbo v. Wireless Toys Franchise,* Case No. 07- 082804-CK (Oakland Cty. Cir. Ct. June 4, 2009) for the proposition that statements made in an FDD could form the basis of a breach of contract claim. (*See* Reply Mem. at 5-6.) Those cases simply found that an inaccurate statement in the FDD could support a franchisee's claim for **fraudulent inducement** or **fraudulent misrepresentation**. *See Altruist,* 308 F. Supp. 3d. at 950; *Abbo,* Case No. 07-082804-CK, at *16. Contrary to the Arbitrator's findings in his Award, these cases are thus not even persuasive (and are totally inapposite) as support for the breach of contract claim. The court's decision in *Weber v. Saladworks, LLC,* 2014 WL 12581768, *3 (C.D. Ca. Jan. 27, 2014), does not support the Arbitrator's findings either. In *Weber,* the court determined that the FDD was relevant to "**understanding** the agreements at issue." 2014 WL 12581768 at *3 (emphasis added). But the Court did not conclude that the FDD was incorporated into the franchise agreement, or that its contents otherwise constituted *contractual* promises.

[7] A UFOC is a predecessor version of what is now called the Franchise Disclosure Document.

comparison to the integration clause in this case impossible. The case should not, therefore, have been relied upon as any authority, let alone persuasive authority, in support of the Arbitrator's conclusion.

Choice also drew attention in the record to the circumstances in which the Franchise Agreement *did* incorporate by reference other agreements and attachments. It explained that to be incorporated into the Franchise Agreement, an agreement must be "specifically made a part of this agreement pursuant to the terms hereof." (Post-Hearing Mem. 50.) Nowhere in the Franchise Agreement is the FDD specifically made a part of it. (*Id.*) When the parties intended to incorporate outside agreements, they did so with express and specific language. (*Id.*)  For example, Section 20(h) provides: "All attachments, addenda and amendments to this Agreement are incorporated into and a part of this Agreement," and, "[a]ll duly-executed addenda and/or amendments are incorporated into and will become a part of this Agreement." (*Id.* citing App. 5, R-004 (Franchise Agreement) § 20(h).) Section 6.g states that the Online Terms of Use for Choice's Property Management System "are expressly incorporated herein by reference and made a part of this Agreement." (*Id.* citing App. 5, R-004 (Franchise Agreement) § 6.g.) No such express words of incorporation concerning the FDD are included in the Franchise Agreement.

The Arbitrator, thus, knew the terms of the integration clause and the applicable law and had no basis for concluding that the FDD was incorporated into the Franchise Agreement.

ii. **Broader case law is in accord with the conclusion that the FDD is not an agreement and is not incorporated into the Franchise Agreement.**

A broader consideration of the case law is in accord with the law presented to the arbitrator and the conclusion that the FDD is not an agreement and is not incorporated into the Franchise Agreement. *See Inash Corp. v. Am. Dairy Queen Corp.*, Case No. CV688-103, 1990 WL 622095, at *5 (S.D. Ga. Aug. 28, 1990) (concluding that "the franchise circular [now known as FDD]

offered by ADQ to prospective purchasers cannot be construed as a contract between the parties," recognizing that "neither party signed the circular," and dismissing a breach of contract claim arising from language in the FDD).

In *Park 80 Hotels, LLC v. Holiday Hospitality Franchising, LLC*, the court determined that a reference to the FDD in the integration clause of a license agreement did not incorporate the FDD by reference into the agreement. Case No. 1:21-CV-04650-ELR, 2023 WL 2445437, at *13 (N.D. Ga. Feb. 16, 2023). The integration clause was highly analogous to the integration clause at issue in this case and provided that:

> This is the entire agreement between the [P]arties pertaining to the licensing of the Hotel and supersedes all previous negotiations and agreements between the parties pertaining to the licensing of the Hotel as a Holiday Inn brand group hotel or Holiday Inn Express brand group hotel. Nothing in the preceding sentence is intended, however, to disclaim any representations [Defendants] made in the franchise disclosure document that [Defendants] provided to [Plaintiffs].

The court there concluded that the disclaimer in the second sentence of the provision was "intended to clarify that the 'Entire Agreement' provision does not prohibit franchisees like Plaintiffs from pursuing a fraud in the inducement claim based on the FDD." *Id.* However, that disclaimer clause, like the one in Choice's Franchise Agreement, did not incorporate the FDD into the Franchise Agreement. *Id.*; *see also Pai v. DRX Urgent Care, LLC*, Case Nos. 13-4333 (JAP)(TJB), 13-3558 (JAP)(LHG), 2014 WL 837158, at *9 (D.N.J. Mar. 4, 2014) (concluding that statements in FDD could not form the basis for a breach of contract claim because the FDD is not incorporated within the franchise agreements and the FDD stated that the terms of the contract between the parties are contained only within the franchise agreement); *Barnes v. Burger King Corp.*, 932 F. Supp. 1420, 1437 (S.D. Fla. 1996) (stating that the UFOC is not part of the franchise agreement). The same conclusion must follow here.

14

In *Le Macaron, LLC v. Le Macaron Development LLC*, the court determined that the FDD was not incorporated into the franchise agreement on the grounds that the FDD stated: "[t]he terms of your contract will govern your franchise relationship." Case No. 8:16-CV-918-17TGW, 2016 WL 6211718, at *7 (M.D. Fla. Oct. 24, 2016). This phrase is prescribed verbatim by the FTC Franchise Rule, *see* 16 C.F.R. § 436.3(e)(3), reflecting the Federal Trade Commission's intention to avoid conflation between the FDD and the Franchise Agreement, which are wholly distinct documents with distinct legal purposes. In compliance with the FTC rule, the FDD in this case contains the same language: "The terms of your franchise agreement will govern your franchise relationship. Do not rely on the disclosure document alone to understand your franchise agreement." (Exhibit 2 to Declaration of Eric Yaffe.)

The record is more than adequate to reflect that the Arbitrator was apprised of the correct legal standard here, yet he chose to disregard ample law demonstrating that the Franchise Disclosure Document is not incorporated into the Franchise Agreement.

**b. The plain language of the contract makes clear that the Franchise Disclosure Document is not incorporated into the Franchise Agreement.**

As noted above, Choice presented the Arbitrator with the applicable standard under North Dakota law. But even if, for some reason, this Court were to determine that the Arbitrator had not been presented with the law by the parties, the Arbitrator's mistakes should still be vacated or modified because Courts are clear that "[i]f the language of an agreement is clear and unequivocal, an arbitrator cannot give it a meaning other than that expressed by the agreement." *Monongahela Valley Hosp., Inc.*, 386 F. Supp. 3d at 601. Moreover, "[w]here an arbitrator injects a restriction into a contract to which the [contracting party] did not agree and to which the [the counterparties] are not entitled, he dispenses his own brand of industrial justice and should be overturned." *Monongahela Valley Hosp. Inc.*, 946 F.3d at 201.

Here, the Arbitrator simply ignored the unambiguous terms of the integration clause. Specifically, the clause contains two clear and unequivocal provisions. The first identifies the exclusive contents of the parties' entire agreement, establishing that the Franchise Agreement and its "attachments" and "any **agreement** specifically made a part of" the Franchise Agreement contain the parties' complete understanding. The Franchise Agreement attachments did not include the FDD. Nor is there any basis for concluding that the FDD constitutes an "agreement specifically made a part of this agreement," because, as stated above, the FDD is a *pre-sale* disclosure document and not an *agreement* as a matter of federal law and policy, and there is no language in the Franchise Agreement specifically making the FDD a part thereof. This provision is "simply not susceptible to more than one reasonable interpretation." *Monongahela Valley Hosp. Inc.*, 946 F.3d at 200.

The second provision of the integration clause is also not susceptible to more than one reasonable interpretation and does not support the conclusion that the FDD is *incorporated* into the Franchise Agreement. That provision does not *incorporate* any other documents but rather exclusively *disclaims* the force and effect of any representation, promise, inducement or agreement not made in the Franchise Agreement or the FDD. This second provision establishes that if a franchisee perceives a promise, inducement, or agreement from any other source, it should not be relied upon; it does not follow, however, that this provision *establishes* that the FDD is a contract, contains contractual promises, or is incorporated into the Franchise Agreement. This provision is also "not susceptible to more than one reasonable interpretation." *Monongahela Valley Hosp. Inc.*, 946 F.3d at 200.

The Arbitrator nevertheless asserts that the integration clause "puts a promise made in the FDD on the precise same footing as those made in the Franchise Agreement." (Partial Award at

16

10.) But this is nonsensical. A statement made in the FDD, if any, is not converted into a *contractual* promise by virtue of the integration clause's disclaimer that representations or promises *not* made in the FDD or Franchise Agreement have no force and effect. Here the Arbitrator injected a restriction into the Franchise Agreement—language in the FDD—to which the parties did not actually contractually agree, requiring that the award be vacated. In other words, regardless of the record, the clear and unequivocal language of the agreement supports vacating or modifying the Award. *Monongahela Valley Hosp., Inc.*, 386 F. Supp. 3d at 601.

### c.  The Arbitrator improperly drew on language outside of the contract.

Finally, courts are clear that an award must be vacated where an arbitrator draws on extra-contractual language to arrive at a conclusion "rather than interpreting the existing agreement." *See Jersey Nurses Econ. Sec. Org. v. Roxbury Med. Grp.*, 868 F.2d 88, 90 (3d Cir. 1989) (vacating arbitration award reasoning that the arbitrator could "do no more than determine what the rights of the parties are under the terms of the agreement as written"). Here, the Arbitrator asserts that the "FDD in this case does include a promise to negotiate favorable pricing," that on this basis "Choice must attempt to negotiate price," and that as a result of its alleged failure to do so, Choice—through an act of the Arbitrator's legal alchemy—"breached the Franchise Agreement in this regard." (Partial Award at 10-11.) The Arbitrator held specifically that, among other things, Choice made "virtually no efforts to leverage its size, scale and distribution to obtain volume discounts on nonmandated goods" in breach of the purported promise set forth **in the FDD**. (*Id.* at 7.) Although the Arbitrator asserted that this conclusion was based on "the language of the Franchise Agreement and Item 8 of the Federal Disclosure Document [*sic*] ("FDD")," he cited only the FDD and not the Franchise Agreement. (*Id.* at 4.)  The lack of actual legal support for this erroneous conclusion is further evident in the plain text of the Arbitrator's own illogical reasoning,

as he is resigned to add that the assertion made in the FDD—which is absent in the parties' actual contract— "**seems** implicit in the franchisor-franchisee relationship." (*Id.*) (emphasis added).[8]

It is a manifest disregard for the law for the Arbitrator to adjudicate a breach of contract claim that contains express terms by resorting, not to the terms of the contract, but by relying on the FDD and resorting to what vaguely "seems implicit" to the Arbitrator about the parties' relationship.[9] This provides yet another basis for vacating or modifying that portion of the Award.

## 2. Courts Have Repeatedly Vacated Awards Where the Arbitrator Disregards the Parties' Contract

Courts in this District and the Third Circuit have repeatedly held that an award must be vacated where the Arbitrator, as here, fails to interpret the parties' contract altogether or disregards clear and unequivocal language in manifest disregard of the canons of contract construction. Specifically, when evaluating a motion to vacate for manifest disregard of a contract, courts must "begin with the obvious: an arbitrator 'may not ignore the plain language of the contract.'" *Monongahela Valley Hosp. Inc. v. United Steel Paper & Forestry Rubber Mfg. Allied Indus. & Serv. Workers Int'l Union AFL-CIO CLC*, 946 F.3d 195, 199 (3d Cir. 2019).[10] The Supreme Court

---

[8] The Arbitrator's accompanying citation on the same page to filings by Choice with the Securities and Exchange Commission, rather than the actual contract between the parties, only serves to highlight the Arbitrator's manifest disregard for the elementary law of contracts. (Award at 10-11.) If disclosures made in SEC filings could be regarded as *contractual promises* that support claims for breach of contract, a sea change in the law of contracts would reverberate throughout the American court system.

[9] Some courts hold that "[a]n award may be overturned only if the arbitrator must have based his award on his own personal notions of right and wrong." *Upshur Coals Corp. v. United Mine Workers of Am., Dist. 31*, 933 F.2d 225, 229 (4th Cir. 1991). The Arbitrator's perception here of what "seems" inherent in the franchise relationship reflects a personal notion of right and wrong that goes beyond the express contractual terms and presents an independent basis for vacating the award.

[10] *See also News Am. Publications, Inc. Daily Racing Form Div. v. Newark Typographical Union Loc. 103*, 921 F.2d 40, 41 (3d Cir. 1990) (vacating an award where the arbitrator went beyond the plain language of the contract, engaging in "equitable dispensation of his own brand of … justice"); *Patten v. Signator Ins. Agency, Inc.*, 441 F.3d 230, 236 (4th Cir. 2006) (vacating an award where

has, likewise, made clear that an "arbitrator may not ignore the plain language of the contract." *Pennsylvania Power Co. v. Loc. Union No. 272, Int'l Bhd. of Elec. Workers, AFL-CIO*, 276 F.3d 174, 178 (3d Cir. 2001) (quoting *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 38 (1987) (vacating award because the "arbitrator's decision conflicts with the express provisions of the Agreemet"). "If the language of an agreement is clear and unequivocal, an arbitrator cannot give it a meaning other than that expressed by the agreement." *Monongahela Valley Hosp., Inc. v. United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union AFL-CIO, CLC*, 386 F. Supp. 3d 596, 601 (W.D. Pa.), *aff'd sub nom. Monongahela Valley Hosp. Inc. v. United Steel Paper & Forestry Rubber Mfg. Allied Indus. & Serv. Workers Int'l Union AFL-CIO CLC*, 946 F.3d 195 (3d Cir. 2019). In *Monongahela Valley Hosp., Inc.*, the parties arbitrated a dispute about employee benefits that arose under the parties' collective bargaining agreement. Upon a motion to vacate for manifest disregard of the law, the District Court and Third Circuit *vacated* the award, agreeing that the Arbitrator's disregard for an exclusivity provision that granted the employer a right to deny the employee's requested vacation benefit "ignored the plain language of the CBA, and . . . failed to draw its essence from the language of the CBA." *Id.*

   As detailed herein, in a convoluted effort to find support in the FDD for Claimant's breach of contract claim where none existed in the Franchise Agreement, the Arbitrator misapplied and disregarded the Franchise Agreement's clear and unequivocal language of the integration clause to conclude that it incorporated the FDD by reference. That clause unambiguously contained a *disclaimer* that is customary in Franchise Agreements and that requires reference to the FDD, but in no way reflects that the FDD itself is a contract or was incorporated into the Franchise

---

the arbitrator read "implied" terms that were absent in and contradicted the plain and unambiguous terms of the parties' actual agreement).

Agreement. The Arbitrator's disregard of the parties' contract leads to the unmistakable conclusion, based on considerable case law, that the relevant portions of the Award should be vacated or modified.

> **3. The Arbitrator's manifest disregard for the law alters the outcome of the case and the portions of the award arising therefrom must be vacated.**

The Arbitrator's manifest disregard for the law potentially has significant legal consequences for Choice as it relates to the other plaintiffs in this case and other franchisees in Choice's system generally. Each Franchise Agreement between Choice and each plaintiff in this case (and indeed, most of the 7,500 franchisees in Choice's system) contains the same or substantially the same integration clause that disclaims reliance on representations outside of the Franchise Agreement and the FDD. Should Claimants' counsel attempt to argue that Arbitrator Petrikis' incorrect determination that the FDD is incorporated into the Franchise Agreement applies to all of the plaintiffs in this case or all of Choice's franchisees generally, Choice could wrongfully be subjected to myriad improper breach of contract claims. Therefore, it is important that the Court correct the portions of the Award holding that the FDD is incorporated into the Franchise Agreement and that Choice is liable for breach of contract arising from alleged violations of statements in the FDD related to the negotiation of discounted prices with Qualified Vendors and the use of key money loans to solicit new franchisees.

## CONCLUSION

For the foregoing reasons, the Court should grant Choice's Motion to Vacate or Modify the Award. The Arbitrator's grant of Claimant's claims for breach of contract should be vacated, at least as they relate to statements (even if mischaracterized as "promises") made in the FDD. Specifically, the Court should vacate, or modify the Partial Award to remove, (1) the finding that the terms of the FDD are incorporated into the Franchise Agreement (*see* Partial Award at 9-10),

(2) the finding that Choice breached a "promise" to negotiate favorable pricing and obtain volume discounts (*see id.* at 10-11), and (3) the finding that Choice breached the FDD by offering key money in connection with the solicitation of new franchisees.

Dated: October 25, 2023

Respectfully submitted,

/s/ *Eric L. Yaffe*
Eric L. Yaffe (admitted pro hac vice)
Maisa J. Frank (admitted pro hac vice)
LATHROP GPM LLP
600 New Hampshire Ave., NW
The Watergate—Suite 700
Washington, DC 20037
202-295-2200
Eric.Yaffe@lathropgpm.com
Maisa.Frank@lathropgpm.com

Kristin M. Stock (admitted pro hac vice)
LATHROP GPM LLP
80 South Eighth Street
500 IDS Center
Minneapolis, MN 55402
612-632-3492
Kristin.Stock@lathropgpm.com

Virginia A. Gibson
HOGAN LOVELLS US LLP
1735 Market Street
23rd Floor
Philadelphia, PA 19103
267-675-4635
virginia.gibson@hoganlovells.com

*Attorneys for Defendants*